Brewster H. Jamieson, ASBA No. 8411122
LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone: 907-277-9511
Facsimile: 907-276-2631
Email: jamiesonb@lanepowell.com
Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| DEETT A. COYLE and EDWARD COYLE,<br><br>Plaintiffs,<br><br>v.<br><br>COLASKA, INC.; and ALASKA RAILROAD CORPORATION,<br><br>Defendants, | Case No. 3:05-cv-00221-TMB |

**MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
FEDERAL PREEMPTION AND EXCLUSIVE JURISDICTION
OF THE SURFACE TRANSPORTATION BOARD**

Defendant Alaska Railroad Corporation ("ARRC"), by and through counsel, hereby moves the court for partial summary judgment on the grounds that all claims regarding ARRC's rail operations and the operation of the rail car loading tipple located on ARRC's property by defendant Colaska are (1) preempted by federal law, and (2) subject to the exclusive jurisdiction of the federal Surface Transportation Board.

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511   Facsimile 907.276.2631

## FACTS

The facts relevant to this motion are as follows (*see* the Declaration of William R. Hupprich[1]):

The claims against defendants concern gravel loading operations onto ARRC trains in a gravel pit adjacent to the plaintiffs' property. Paragraph 10 of plaintiffs' Second Amended Complaint alleges that there was "erected upon Gravel Pit a gravel pit, including a tipple, a device to load gravel directly onto Railroad cars." The Second Amended Complaint's claims against defendants, including ARRC[2], allege that the gravel loading and railroad operations at the gravel pit cause excessive noise, vibration, dust and debris:

> 10. ... Since the tipple's installation, it has been used on almost a daily basis during construction season, often twice a day, once during the night, for an approximately 3 hour duration.
>
> 11. The use of the tipple makes so loud a noise so as to render it impossible, while it is being operated to hear ordinary conversation. Said tipple causes Plaintiffs' residence to shake making it difficult, if not impossible, to sleep during the loading of a train in the night time hours.
> ...
> 13. Other operations of the gravel pit in addition to the tipple operation create excess levels of dust and other debris in the air wafting to the Coyle Property.
> ...
> 16. ... said noise and dust interferes with their use and enjoyment of their property as well as leading to loss of sleep and possibly further health problems.

---

[1] The signed original of Mr. Hupprich's declaration was filed with this court in support of ARRC's Motion to Intervene as a Party Defendant. A copy of Mr. Hupprich's declaration is attached hereto for the convenience of the court.

[2] Under the Court's Order of November 21, 2005 (Docket No. 13), paragraphs 10-16 of the Second Amended Complaint are deemed to have been made against ARRC.

MOTION FOR PARTIAL SUMMARY JUDGMENT RE: FEDERAL PREEMPTION
AND EXCLUSIVE JURISDICTION OF THE SURFACE TRANSPORTATION BOARD
*Coyle v. Colaska, Inc., et al.* (Case No. 3:05-cv-00221-TMB)                                         Page 2 of 20

Plaintiffs allege that the gravel pit operations constitute a "nuisance" and "trespass" on their property. Second Amended Complaint, paragraph 14, and Prayer for Relief at paragraph 2. Plaintiffs seek to permanently enjoin ARRC's railroad operations at the gravel pit. *Id.*, paragraph 16, and Prayer for Relief at paragraph 1. Plaintiffs' also seek to permanently enjoin operation of the tipple and the gravel loading operations by Colaska. *Id.*

The tipple was supplied/constructed by defendant Colaska, Inc. within ARRC's railroad right-of-way pursuant to the terms of ARRC Special Land Use Permit, Contract No. 8518 (Exhibit A hereto). The 9315' loading track was constructed jointly by Colaska, Inc. and ARRC on ARRC's railroad right-of-way. Both parties contributed labor and materials and each own a portion of the loading track. ARRC operates the loading track pursuant to an Industry Track Agreement, Contract No. 8519 (Exhibit B hereto). ARRC owns the railcars and locomotives used to haul gravel from the pit as well as the mainline track and siding used to access the loading track. ARRC has the right to use the loading track for other purposes when not being used to load gravel cars. Upon information and belief, ARRC has in the past used the loading track to store other rail equipment during the winter months.

Paragraphs 10-16 of the Second Amended Complaint directly affect ARRC's interests as discussed above. If the gravel loading operation in the pit were permanently enjoined as sought in the complaint, the effect would be to shut down ARRC's property and railroad transportation operations at the gravel pit, as well as ARRC's interests in the contracts with Colaska, Inc. attached as Exhibits A and B. The direct economic impact to ARRC if plaintiffs are successful is significant.

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there are no genuine issues of material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). One of the primary purposes of the summary judgment procedure is to "isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). The U.S. Supreme Court has stated:

> . . . the plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Id.*, 477 U.S. at 322.

As the movant, ARRC has the initial burden of establishing the absence of a genuine issue of material fact. *Id.*, 477 U.S. at 323. All justifiable inferences of fact are to be drawn in the favor of plaintiffs, the non-movants. *E.g. Dufay v. Bank of America N.T. & S.A. of Oregon*, 94 F.3d 561, 564 (9th Cir. 1996). However, once a properly supported motion for summary judgment is made by ARRC, the burden shifts to plaintiffs to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A mere "scintilla" of evidence will not be sufficient to defeat ARRC's motion; instead, plaintiffs must introduce some "significant probative evidence" tending to support the complaint. *Id.*, 477 U.S. at 249, 252; *Summers v. A. Teichert & Sons, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997). If plaintiffs' evidence is merely colorable or not significantly probative, summary judgment should be entered for ARRC. *Eisenberg v. Insurance Co. of North America*, 815 F.2d 1285, 1288 (9th Cir. 1987). Moreover, plaintiffs' evidence must be admissible in order to defeat summary judgment. *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181-82 (9th Cir. 1988).

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511 Facsimile 907.276.2631

Further, this motion concerns statutory construction and interpretation, which is a pure question of law subject to summary disposition. *See Soltani v. W. & S. Life Ins. Co.*, 258 F.3d 1038, 1041 (9th Cir. 2001) ("The interpretation and construction of statutes are questions of law reviewed de novo.").

## ARGUMENT

1. **The Interstate Commerce Commission Termination Act ("ICCTA") Governs And Preempts Claims Against ARRC's Operations At The Gravel Pit, And Gives Exclusive Jurisdiction To The Surface Transportation Board.**

    (a) **Applicable Law.**

    At 49 U.S.C. § 10101 *et seq.* is the Interstate Commerce Commission Termination Act ("ICCTA"), which regulates rail transportation in the United States. The ICCTA abolished the Interstate Commerce Commission and transferred its functions to the Surface Transportation Board ("STB"). *See Redmond-Issaquah R.R. Preservation Ass'n v. Surface Transp. Bd.*, 223 F.3d 1057, 1059 n. 1 (9th Cir. 2000).

    The statute on which this portion of the motion is based is 49 U.S.C. § 10501(b)(2) of the ICCTA, which provides:

    The jurisdiction of the Board[3] over –
    ...
    (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

---

[3] All references in the ICCTA to the "Board" refer to the STB. *See* 49 U.S.C. § 10102(1): "In this part – (1) 'Board' means the Surface Transportation Board."

>*is exclusive*. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation *are exclusive and preempt* the remedies provided under Federal or State law.
>(emphasis added)

As part of the ICCTA, § 10501 is to be interpreted broadly. *See City of Auburn v. United States*, 154 F.3d 1025, 1030 (9th Cir. 1998) (the case law construing § 10501 finds "a broad reading of Congress' preemption intent, not a narrow one"); *CSX Transp., Inc. v. Georgia Public Service Comm.*, 944 F.Supp. 1573, 1581 (N.D.Ga. 1996) ("it is difficult to imagine a broader statement of Congress' intent to preempt state regulatory authority over railroad operations"); *Wisconsin Central Ltd. v. City of Marshfield*, 160 F.Supp.2d 1009, 1013 (W.D.Wis. 2000) (the language of the ICCTA is "clear and broad").

The broad preemptive effect of the ICCTA is a result of the Congressional intent behind the ICCTA to significantly reduce state and local regulation on railroads. *See Maynard v. CSX Transp., Inc.*, 360 F.Supp.2d 836, 842 (E.D.Ken. 2004) ("Congress intended for the ICCTA to significantly reduce state and local regulation of railroads."); *City of Auburn*, 154 F.3d at 1031 (holding that "congressional intent to preempt ... state and local [environmental] regulation of rail lines is explicit in the plain language of the ICCTA and the statutory framework surrounding it"); *Columbiana County Port Auth. v. Boardman Township Park Dist.*, 154 F.Supp.2d 1165, 1180 (N.D.Ohio 2001) (holding that the "ICCTA evidences the intent of Congress to preempt the field in which state law previously operated with respect to railroads. In particular, Congress granted the STB exclusive jurisdiction over all matters of rail transportation, including intrastate railroad tracks," and that "[s]tate law is ... preempted to the extent that it conflicts with federal law by standing 'as an obstacle to the accomplishment and execution of the full objectives of Congress'"); *Burlington*

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

*Northern Santa Fe Corp. v. Anderson,* 959 F.Supp. 1288, 1295 (D.Mont. 1997) (reading the ICCTA broadly to find preemption of state regulation of railroad agencies and finding that the "[l]egislative history supports this analysis, as Congress noted that the 'Federal scheme of economic regulation and deregulation is intended to address and encompass *all* such regulation and to be completely exclusive'")(emphasis in original); *CSX Transp., Inc. v. Georgia Public Serv. Comm'n,* 944 F.Supp. 1573, 1583 (N.D.Ga. 1996) (holding that "[b]y preempting state regulation of railroad operations, and granting exclusive jurisdiction over the regulation of almost all aspects of railroad operations to the STB, Congress removes the ability of states to frustrate its policy of deregulating and reviving the railroad industry.").

    **(b)   Section 10501(b)(2) Applies To The Claims Against ARRC.**

Plaintiffs' complaint against ARRC comes squarely within the scope of § 10501(b)(2) because it seeks to interfere with and prevent the "operation" of ARRC's "track" and "facilities"[4] at the gravel pit. By its own terms, § 10501 applies even through ARRC's tracks at issue are located entirely within Alaska. In addition, § 10501 applies to ARRC pursuant to 45 U.S.C. § 1207(a)(1), which provides (with exceptions not relevant here), that ARRC "shall be a rail carrier engaged in interstate and foreign commerce subject to part A of subtitle IV of Title 49 and all other Acts applicable to rail carriers subject to that chapter ...."

---

[4] For an example of what constitutes railroad "facilities," *see* 49 C.F.R. 200.3:

> "Facility" means railroad tracks, right-of-way, fixed equipment and facilities, real–property appurtenant thereto, and includes signal systems, passenger station and repair tracks, station buildings, platforms, and adjunct facilities such as water, fuel, steam, electric, and air lines.

MOTION FOR PARTIAL SUMMARY JUDGMENT RE: FEDERAL PREEMPTION
AND EXCLUSIVE JURISDICTION OF THE SURFACE TRANSPORTATION BOARD
*Coyle v. Colaska, Inc., et al.* (Case No. 3:05-cv-00221-TMB)    Page 7 of 20

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511   Facsimile 907.276.2631

Therefore, as a matter of law, 49 U.S.C. § 10501(b)(2) applies to this case under the plain language of that statute.

### (c) Plaintiffs' State Law Claims Regarding ARRC Are Preempted And Can Only Be Addressed Under The Exclusive Jurisdiction Of The Surface Transportation Board.

Pursuant to the express terms of § 10501, the courts have recognized the STB's exclusive jurisdiction over the operation of a railroad's track and facilities. As explained by the Ninth Circuit:

> Section 10501 of the ICCTA, which governs the STB's jurisdiction, states the [B]oard will have *exclusive* jurisdiction over "the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State." 49 U.S.C. § 10501(b)(2) (1997). The same section states that "the remedies provided under this part with respect to regulation of rail transportation are *exclusive* and *preempt* the remedies provided under Federal or State law." 49 U.S.C. § 10501(b) (1997).... The section unambiguously states: "The authority of the Board under this subchapter is *exclusive*."
> (emphasis in original)

*City of Auburn,* 154 F.3d at 1030.

*And see Green Mountain R.R. Corp. v. Vermont*, 404 F.3d 638, 641 (2nd Cir. 2005); *Friberg v. Kan. City S. Ry. Co.*, 267 F.3d 439, 443 (5th Cir. 2001) ("The language of [§ 10501(b)] could not be more precise, and it is beyond peradventure that regulation of KCS train operations, as well as the construction and operation of the KCS side tracks, is under the exclusive jurisdiction of the STB unless some other provision in the ICCTA provides otherwise."); *Tyrrell v. Norfolk Southern Ry. Co.*, 248 F.3d 517, 521 (6th Cir. 2001) (49 U.S.C. § 10501(b) "provides the STB with exclusive jurisdiction to regulate rail carriers' construction and operation of rail switches, side tracks, and facilities.").

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511   Facsimile 907.276.2631

MOTION FOR PARTIAL SUMMARY JUDGMENT RE: FEDERAL PREEMPTION
AND EXCLUSIVE JURISDICTION OF THE SURFACE TRANSPORTATION BOARD
*Coyle v. Colaska, Inc., et al.* (Case No. 3:05-cv-00221-TMB)                                    Page 8 of 20

The courts have also recognized that § 10501(b)(2) preempts state law with respect to railroad operations. *See City of Auburn, supra* (finding that § 10501(b)(2) expresses Congress's broad intent to preempt state regulatory authority over railroad operations); *Green Mountain R.R. Corp, supra*; *Railroad Ventures, Inc. v. Surface Transp. Bd.*, 299 F.3d 523 (6th Cir. 2002) ("Finally, we note that the ICCTA preempts the Ohio state statutes in question to the extent that they intrude upon the jurisdiction of the STB with regard to the regulation of rail transportation under § 10501(b)); *CSX Transp., Inc. v. Georgia Public Service Comm'n*, 944 F.Supp. 1573, 1581 (N.D.Ga. 1996) (stating regarding § 10501(b)(2): "It is difficult to imagine a broader statement of Congress's intent to preempt state regulatory authority over railroad operations."); *Burlington Northern Santa Fe Corp. v. Anderson*, 959 F.Supp. 1288, 1294-95 (D.Mont. 1997) (stating regarding the ICCTA: "Congress noted that the 'Federal scheme of economic regulation and deregulation is intended to address and encompass *all* such regulation and to be completely exclusive.'"); *Application of Burlington Northern R. Co.*, 545 N.W.2d 749, 750 (Neb. 1996) (state courts no longer have jurisdiction to consider practices, routes, services, and facilities of interstate rail carriers after ICCTA granted federal STB with exclusive jurisdiction over transportation by rail carriers).

More particularly, plaintiffs' allegations that ARRC's operations at the gravel pit constitute a nuisance and trespass are preempted by the ICCTA and are subject to the exclusive jurisdiction of the STB. For example, *Guckenberg v. Wisconsin Central Ltd.*, 178 F.Supp.2d 954 (E.D.Wis. 2001), involved claims of noise and disruption from railroad activities very similar to those made by the plaintiffs in the instant case. In *Guckenberg*, the railroad had built side tracks directly across the street from the plaintiffs' residence. The residence had existed before the side

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

tracks were put in. The plaintiffs alleged that "the coupling and uncoupling of trains, squealing of wheels, braking noises, slamming of cars, switching direction of train travel, flying switches of railroad cars, idling locomotive diesel engines and other similar incidents occur as many as 60 times per month, lasting as long as several hours per episode." 178 F.Supp.2d at 956. The plaintiffs in *Guckenberg* sued the railroad under the common law of nuisance, and sought actual and punitive damages. The railroad moved for summary judgment, which was granted on preemption grounds under 49 U.S.C. § 10501(b)(2):

> The Court concludes that the Guckenbergs' common law nuisance action is preempted. Because the conduct at issue in this case pertains to the "operation ⋯ of a side track ⋯ intended to be located, entirely in one State," the STB's jurisdiction over WCL's conduct is "exclusive." § 10501(b)(2). Furthermore, because the Guckenbergs' cause of action qualifies as "regulation," it is expressly preempted by the statute because "the remedies provided under [§ 10501] with respect to rail transportation are exclusive and preempt the remedies provided under Federal or State law."§ 10501(b). ... Under the plain terms of § 10501(b), Wisconsin cannot provide its citizens with "remedies," such as a suit at common law, to redress the effect of WCL's operation of its side track because the remedies provided under the Act are "exclusive and preempt" all other remedies.

*Id.* at 958.

Similarly, in *Rushing v. Kansas City Southern R.R. Co.*, 194 F.Supp.2d 493 (S.D.Miss. 2001), the plaintiffs brought a nuisance claim complaining that the operation of a railroad's switch yard, which was located close to the plaintiffs' home, caused "unbearable levels of noise," and "damaging vibrations." The court dismissed those claims as interfering with the railroad's operation of its switch yard:

> The Court finds, for the reasons discussed above, that to the extent the Plaintiffs seek to use state law to control noise production by regulating the manner in which the Defendant operates its switch yard, for example by restricting the hours at which time it may conduct switching and whistle-blowing activities, controlling the number of trains engaged in switching operations at any given

MOTION FOR PARTIAL SUMMARY JUDGMENT RE: FEDERAL PREEMPTION
AND EXCLUSIVE JURISDICTION OF THE SURFACE TRANSPORTATION BOARD
*Coyle v. Colaska, Inc., et al.* (Case No. 3:05-cv-00221-TMB)                    Page 10 of 20

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

> time, and by requiring that the Defendant employ different techniques when braking its trains, all of which would result in an economic impact on the Defendant, the state law has been preempted by the ICCTA which vests exclusive jurisdiction in the STB over such matters.

194 F.Supp.2d at 500-01.

*And see Friberg*, 267 F.3d at 443 (state law claims preempted because suit regarding railroad's alleged obstruction of plaintiffs' property through use of sidetracks would affect railroad operations); *Maynard*, 360 F.Supp.2d at 842 (summary judgment granted for railroad; state law claims against railroad, whose use of sidetrack for coal loading operations blocked access to plaintiffs' property and permitted drainage onto the property from adjoining properties, were preempted because "ICCTA preempts state common law claims with respect to railroad operations"); *Suchon v. Wis. Cent. Ltd.*, 2005 WL 568057 (W.D.Wis.) (business owner adjacent to railroad tracks sought state law damages for nuisance and trespass due to vibrations and fumes from increased use of tracks; because plaintiff wanted to use state law "to affect the conduct of a railroad," summary judgment for railroad was granted; the court held that plaintiff "cannot sue defendant under the common law of nuisance because such an action is preempted by the Interstate Commerce Commission Termination Act of 1995"); *Village of Ridgefield Park v. New York, S. & W. Ry. Co.*, 163 N.J. 446, 462, 750 A.2d 57, 67 (2000) ("we agree ... that our courts cannot adjudicate common law nuisance claims against the Railroad because to do so would infringe on the STB's exclusive jurisdiction over the location and operations of railroad facilities.").

Therefore, the claims alleged against ARRC are preempted by the ICCTA and are subject to the exclusive jurisdiction of the STB.

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511 Facsimile 907.276.2631

3. **State Law Claims Regarding The Tipple Are Preempted By The ICCTA And Are Subject To The Exclusive Jurisdiction Of The Surface Transportation Board.**

(a) **Applicable Law.**

This portion of the motion regarding the tipple is based on 49 U.S.C. § 10501(b)(1) of the ICCTA, which provides:

> The jurisdiction of the Board over –
>
> (1) *transportation* by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; ...
>
> *is exclusive.* Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation *are exclusive and preempt* the remedies provided under Federal or State law.
> (emphasis added)

"Railroad carrier" is defined in 49 U.S.C. § 10102(5) in part as: "a person providing common carrier railroad transportation for compensation ...."

"Railroad" is defined in 49 U.S.C. § 10102(6) as including:

> (A) a bridge, car float, lighter, ferry, and intermodal equipment used by or in connection with a railroad;
> (B) the road used by a rail carrier and owned by it or operated under an agreement; and
> (C) a switch, spur, track, terminal, terminal facility, and a freight depot, yard, and ground, used or necessary for transportation.

"Transportation" is defined in 49 U.S.C. § 10102(9) as:

> (A) a locomotive, car, vehicle, vessel, warehouse, wharf, pier, dock yard, property, *facility*, instrumentality, or *equipment of any kind related to the movement* of passengers or *property*, or both, *by rail, regardless of ownership* or an agreement concerning use; *and*

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

(B) *services related to that movement, including receipt*, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, *handling*, and interchange of passengers and *property*;
(emphasis added)

As discussed above, the preemption intent of the ICCTA is to be interpreted broadly. *City of Auburn*. Moreover, based on the above statutes and the Congressional intent of the ICCTA as discussed above, courts have derived three related factors to determine the preemptive scope of the ICCTA under § 10501(b)(1):

First, the ICCTA preempts the state regulation of facilities and activities which are integrally related to the provision of rail service, even if those facilities or activities are themselves "non-rail" and are ancillary to a railroad's operation. *See Green Mountain R.R. Co.*, 404 F.3d at 644; *Grafton and Upton R.R. Co. v. Town of Milford*, 337 F.Supp.2d 233, 238 (D.Mass. 2004) ("The statutory language [of the ICCTA] indicates an express intent on the part of Congress to preempt the entire field of railroad regulation, including activities related to but not directly involving railroad transportation."); *Flynn v. Burlington Northern Santa Fe Corp.*, 98 F.Supp.2d 1186, 1189-90 (E.D.Wash. 2000) (citing *Borough of Riverdale*, 1999 WL 715272 at *7 (S.T.B.)).

Second, the ICCTA preempts state law which attempts to regulate and interfere with railroad operations contrary to the intent of the ICCTA. *See Village of Ridgefield Park*, 750 A.2d at 66-67 (village could not dictate the location of the railroad's maintenance facility because it would "interfer[e] with the efficiency of railroad operations that are part of interstate commerce[5]"); *Boston and Maine Corporation and Town of Ayer, MA*, 2001 WL 458685 *6 (S.T.B.) (the test is whether the

---

[5] As was noted above, 45 U.S.C. § 1207(a)(1) provides that ARRC engages in "interstate and foreign commerce."

MOTION FOR PARTIAL SUMMARY JUDGMENT RE: FEDERAL PREEMPTION
AND EXCLUSIVE JURISDICTION OF THE SURFACE TRANSPORTATION BOARD
*Coyle v. Colaska, Inc., et al.* (Case No. 3:05-cv-00221-TMB)                                              Page 13 of 20

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

local regulation "is being applied so as to not unduly restrict the railroad from conducting its operations, or unreasonably burden interstate commerce"); *Columbiana County Port Auth.*, 154 F.Supp.2d at 1180 (state law is preempted to the extent it stands "as an obstacle to the accomplishment and execution of the full objectives of Congress" in the ICCTA); *In re Appeal of Vermont Railway*, 769 A.2d 648, 655 (Vt. 2000) (court should examine whether regulations imposed on railroad "stood as an obstacle to the goals of the ICCTA").

Third, state action against a railroad is preempted by the ICCTA where the state action's economic impact would foreclose or restrict the railroad's ability to conduct its operations. *Village of Ridgefield Park*, 750 A.2d at 66; *City of Auburn*, 154 F.3d at 1030 (recognizing that one of Congress's purposes in the ICCTA was the preemption of economic regulation of the railroads).

As discussed below, ARRC's operations involving the tipple meet all of the above criteria for preemption of plaintiffs' claims against the operation of the tipple.

(b) **Preemption And The Exclusive Jurisdiction Of The Surface Transportation Board Regarding The Tipple Are Established Under The Plain Statutory Language.**

It is undisputed that the tipple is located on ARRC's property and is used exclusively to load gravel into rail cars for transportation by ARRC over its rails to other locations. The tipple comes within the definition of "transportation" in 49 U.S.C. § 10102(9) because it is a "facility" or "equipment" "related to the movement of ... property [i.e., the gravel] by rail." Colaska's operation of the tipple to load gravel into ARRC's rail cars also comes within the definition of "transportation" in 49 U.S.C. § 10102(9) because it is a "service" "related to the movement of ... property [i.e., the gravel] by rail." The fact that the tipple is owned by Colaska is irrelevant, as § 10102(9) applies

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511 Facsimile 907.276.2631

"regardless of ownership" of the transportation facility or equipment which otherwise comes within the definition of that statute. That is, a facility or equipment may be "transportation" within the definition of § 10102(9), and thus come within ICCTA preemption, even though it is not owned by a rail carrier. Because ownership of the tipple is disregarded, the essential point is that the tipple is used to load gravel into rail cars for movement by ARRC. ARRC is unquestionably a "rail carrier" using the tipple to provide rail transportation services for the gravel. ARRC's use of the tipple is thus "transportation by a rail carrier" within the scope of § 10501(b)(1). The exclusive jurisdiction of the STB over the gravel loading operation of the tipple is, therefore, established by application of the plain statutory language.

Moreover, preemption of, and the STB's exclusive jurisdiction over, plaintiffs' claims against the operation of the tipple are also demonstrated by the fact that the tipple is an "ancillary" facility, which is a term of art derived from the STB's categorization of "truck transfer facilities, weigh stations, or similar facilities ancillary to ...railroad operations." *Borough of Riverdale*, 1999 WL 715272 at * 4. Courts have found that "ancillary" railroad loading facilities such as the tipple in the instant case are "transportation" as defined by § 10102(9). *See Canadian National Rwy. Co. v. City of Rockwood*, 2005 WL 1349077 at *4 (E.D.Mich.) ("the activities which take place at such transload facilities are considered 'transportation' by the ICCTA.").

(c) **Preemption And The Exclusive Jurisdiction Of The Surface Transportation Board Regarding The Tipple Are Established Under The Court-Created Factors.**

Courts have also found that the attempted prohibition or undue restriction of ancillary loading facilities is preempted under the ICCTA and subject to the exclusive jurisdiction of the STB where the factors discussed above are satisfied; i.e., if the ancillary facility is integral to railroad

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511 Facsimile 907.276.2631

operations, or the regulation of the ancillary facility would unduly burden or have a significant economic impact on the railroad's operations.

In *Boston and Maine Corporation and Town of Ayer, MA*, 2001 WL 458685 (S.T.B.), the STB found that a town ordinance banning an automobile unloading facility operating on railroad property on the grounds that the facility was a "noisome trade" and a nuisance, was preempted under 49 U.S.C. § 10501(b). The STB discussed the scope of preemption under § 10501(b):

> Court and agency precedent interpreting the statutory preemption provision have made it clear that, under this broad preemption regime, state and local regulation cannot be used to veto or unreasonably interfere with railroad operations. ...
>
> As the courts have also found in addressing the scope of § 10501(b), zoning ordinances and local land use permit requirements are preempted where the facilities are an integral part of the railroad's interstate operations. ....

*Id.* at *5.

In the STB's view, the test is whether the local regulation "is being applied so as to not unduly restrict the railroad from conducting its operations, or unreasonably burden interstate commerce." *Id.* at 6. In *Town of Ayer*, the STB found that the town's attempt to flatly prohibit the automobile unloading facility interfered with interstate commerce and the railroad's ability to conduct its operations. *Id.* And see *Boston and Maine Corp. v. Town of Ayer*, 330 F.3d 12, 16-17 (1st Cir. 2003) (adopting the STB's decision in *Town of Ayer*). The STB's decision in *Town of Ayer* is especially instructive and applicable to the instant case because the automobile unloading facility in that case was to be built and operated not by the rail carrier itself, but a related, non-rail entity. *See id.* at 13. This illustrates again that under § 10102(9) the ownership of a facility is disregarded in the determination of whether it may be defined as "transportation" under that statute.

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

In *Green Mountain R.R. Co.*, the question was whether state environmental regulations applied to a railroad transloading facility which was used to unload bulk salt and cement for transport by truck, and also for storing and transporting non-bulk goods such as steel pipes. The Second Circuit, relying on §§ 10501(b) and 10102(9), found that "the proposed transloading and storage facilities are integral to the railroad's operation and are easily encompassed within the Transportation Board's exclusive jurisdiction over 'rail transportation.'" 404 F.3d at 644.

In *Grafton and Upton R.R. Co.*, the railroad wanted to develop a rail yard to provide for the unloading and distribution via truck of steel brought in by rail cars. The court found that the ICCTA preempted state and municipal regulation of the development:

> Thus, a review of the cited precedent clearly indicates that the proposed development of the Milford Yard relates to interstate rail transportation and that the enforcement of conflicting state and municipal regulations would interfere with the proposed interstate rail operations.
>
> Although the Milford Yard will clearly have a trucking component, an examination of the analogous scenarios discussed in the cited caselaw demonstrates that ***such a non-rail component is still subject to the preemptive effect of the ICCTA***. Without the non-rail component of the proposed development, the amount of steel to be shipped to the Milford area via the CSX line almost certainly would be diminished. That impact on interstate commerce leads to the conclusion that the proposed GU-BRT development is governed by the ICCTA, that Massachusetts environmental regulations and local zoning by-laws are preempted ....

337 F.Supp.2d at 239 (emphasis added).

In *In re Appeal of Vermont Railway*, the railroad used a salt shed on its property which the court found to be a transfer facility and thus an ancillary facility. The court agreed with a lower court's finding that conditions imposed by the city on the salt shed "that purported to regulate the operation of the railroad, including the transport of goods by the railway," were preempted by the

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511 Facsimile 907.276.2631

ICCTA. 769 A.2d at 655. The conditions struck by the lower court because of ICCTA preemption included limitations on the total annual capacity of the salt shed, the hours during which salt could be delivered to the facility by rail, and the number of trucks that could pick up salt delivered by rail. *Id.*

In *Village of Ridgefield Park*, the village brought common-law nuisance claims and sought an injunction against a railroad maintenance facility. The court held that it could not adjudicate the nuisance claim because the STB had exclusive jurisdiction. 750 A.2d at 67.

And in *City of Rockwood*, local attempts to regulate a railroad transloading facility which handled construction and demolition debris were held to be preempted by the ICCTA because the facility was "integrally related to the provision of interstate rail service." 2005 WL 1349077 at *4.

ARRC's and Colaska's operations involving the tipple satisfy all of the factors discussed above and in the above cases for preemption of plaintiffs' claims against the operation of the tipple. The purpose for constructing the industry track from ARRC's main track to the tipple was to serve the gravel loading operations of the tipple. The Special Land Use Permit at Exhibit A, which granted a permit to Colaska to operate the tipple within ARRC's right-of-way, states in relevant part:

> 1. <u>Grant of Rights</u>. ... This Permit is related to the Industry Track Agreement between the parties, ARRC Contract No. 8519, executed concurrently with this Permit, which governs the industry track both within and outside of the Permit Area, as finally constructed and owned by Permitee to serve the gravel operation.
> 2. <u>Use by Permitee</u>. The Permitee may use the Permit Area only for the following limited purposes: <u>installing, operating and maintaining a gravel loading system, tipple and associated equipment</u>. ....

Also, the Industry Track Agreement at Exhibit B, which provides for the actual construction of the track to the tipple, states in the third WHEREAS clause that Colaska "desires track facilities ... to be installed ... to allow rail service to its gravel operations ...." Without the

MOTION FOR PARTIAL SUMMARY JUDGMENT RE: FEDERAL PREEMPTION
AND EXCLUSIVE JURISDICTION OF THE SURFACE TRANSPORTATION BOARD
*Coyle v. Colaska, Inc., et al.*   (Case No. 3:05-cv-00221-TMB)                Page 18 of 20

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

tipple, there would be no reason for ARRC to maintain its facilities at the gravel pit. As was noted in the Declaration of William R. Hupprich, if the gravel loading operation and the operation of the tipple were permanently enjoined as sought by the plaintiffs, the effect would be to shut down ARRC's property and railroad transportation operations at the gravel pit. Thus, the tipple is "integrally related" to ARRC's rail operations because use of the tipple to load gravel onto the rail cars is essential and integral to the purpose and use of ARRC's track and equipment at the gravel pit. Further, for the same reasons, enjoining the tipple and gravel loading operation would unquestionably cause the maximum possible burden on and interference with ARRC's rail operations at the gravel pit, as the effect would be to totally shut down ARRC's operations there. Enjoining the operation of the tipple would be contrary to the purpose of the ICCTA—which is to protect railroads from state and local interference and regulation—because it would impermissibly regulate and obstruct ARRC rail operations. In addition, it is also unquestionable, as shown by Mr. Hupprich's Declaration, that the direct economic impact to ARRC from shutting down the tipple and gravel loading operations would be significant.

In conclusion, (1) the tipple and the operation thereof comes within the definition of "transportation" under 10102(9); (2) the use of the tipple to load gravel into ARRC's cars is "transportation by a rail carrier" within the scope of § 10501(b)(1); (3) the tipple is integrally related to ARRC's railroad operations at the gravel pit; (4) enjoining the operation of the tipple would regulate, substantially interfere with, and obstruct ARRC's rail operations at the gravel pit; and (5) enjoining the operation of the tipple would have a substantial economic impact on ARRC. Plaintiffs' nuisance claims regarding the operation of the tipple and request for an injunction are therefore

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

preempted by § 10501(b)(1) of the ICCTA and, also pursuant to § 10501(b)(1), those claims are subject to the exclusive jurisdiction of the STB.

## CONCLUSION

The Second Amended Complaint brought state law claims against ARRC and Colaska seeking to interfere with and prevent the operation of the tipple and ARRC's use of its facilities and operations at the gravel pit. Pursuant to 49 U.S.C. § 10501(b)(1) and (b)(2) of the ICCTA, (1) plaintiffs' state law claims against ARRC and the operation of the tipple are preempted; and (2) the federal Surface Transportation Board has exclusive jurisdiction over such claims.

Therefore, for the reasons stated above, the court is respectfully requested to dismiss the claims alleged by plaintiffs against ARRC, and the claims relating to the operation of the tipple, in their entirety and with prejudice.

DATED this 10th day of March, 2006.

                                  LANE POWELL LLC
                                  Attorneys for Alaska Railroad Corporation

                                  By  s/ Brewster H. Jamieson
                                    Brewster H. Jamieson
                                    301 West Northern Lights Boulevard, Suite 301
                                    Anchorage, Alaska 99503-2648
                                    Tel:  907-277-9511
                                    Fax:  907-276-2631
                                    Email:  jamiesonb@lanepowell.com
                                    ASBA No. 8411122

I certify that on March 10, 2006, a copy
of the foregoing was served by ECF on:

Douglas C. Perkins, Esq.  dp@hartig.com
David J. Schmid, Esq.  schmid-law@gci.net

 s/ Brewster H. Jamieson
113951.0010/154023.1

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631