# ALASKA RAILROAD CORPORATION



Corporate Address:  P.O. Box 107500, Anchorage, Alaska 99510
327 West Ship Creek Avenue, Anchorage, Alaska 99501
www.alaskarailroad.com

ARRC Contract No. <u>8518</u>

## SPECIAL LAND USE PERMIT

THIS SPECIAL LAND USE PERMIT ("Permit") is made on the day executed by the last signatory hereto, by and between the <u>ALASKA RAILROAD CORPORATION</u>, a public corporation created by AS 42.40 ("ARRC"), whose address is <u>P.O. Box 107500, Anchorage, Alaska 99510-7500</u>, and <u>COLASKA, INC. D/B/A QAP</u>, an Alaska corporation ("Permittee"), whose mailing address is <u>240 W. 68th Avenue, Anchorage, Alaska 99518</u>.

1. <u>Grant of Rights</u>. ARRC hereby grants to Permittee a non-exclusive revocable permit to occupy and use the property more specifically described in Exhibit A attached hereto (the "Permit Area") for the limited purposes and upon the terms and conditions set forth herein. The property is generally described as being approximately <u>52,544 square feet within ARRC's track right-of-way in the vicinity of ARRC Milepost 165, east of Pittman Road and approximately five miles outside Wasilla near the intersection of the Parks Highway and Vine Road</u>. Permittee was previously authorized to enter the Permit Area and adjacent ARRC right-of-way under a Temporary Construction Permit, ARRC Contract No. 8588 dated March 26, 2003, for purposes of initial roadbed construction of an industry track to serve Permittee's gravel extraction operation on adjacent property. This Permit is related to the Industry Track Agreement between the parties, ARRC Contract No. 8519, executed concurrently with this Permit, which governs the industry track both within and outside of the Permit Area, as finally constructed and owned by Permittee to serve the gravel operation.

2. <u>Use by Permittee</u>. The Permittee may use the Permit Area only for the following limited purposes: <u>installing, operating and maintaining a gravel loading system, tipple and associated equipment</u>. ARRC shall have the right to enter the Permit Area and the personal property of Permittee located thereon at any time upon reasonable notice to determine whether Permittee is operating in accordance with the terms of this Permit.

3. <u>ARRC Use</u>. ARRC reserves for itself, its successors, assigns, permittees and licensees, the right to use the Permit Area for any purpose whatsoever, except for the purpose of gravel loading for anyone other than Permittee or ARRC.

4. <u>Specific Conditions Within Permit Area</u>.

(a) Permittee shall maintain the property in a neat and clean condition. Any debris, waste materials, contamination or pollution arising from the Permittee's activity shall be removed from ARRC's property by Permittee promptly upon occurrence, or immediately upon

ARRC Contract No. 8518  
Colaska, Inc. d/b/a QAP

EXHIBIT A
PAGE 1 OF 18

Special Land Use Permit
Page 1 of 6

request by ARRC, and in any event prior to termination of this Permit.

(b) No improvement or facility, including temporary structures and fences, may be constructed in the Permit Area without prior written approval of ARRC and shall be performed in accordance with ARRC's Standard Specifications for Work on Railroad Property, a copy of the current version of which is attached as Exhibit B. If the Permit Area is within an area governed by local building or land use regulations, any construction must comply with such regulations.

(c) The general contour of the Permit Area shall not be altered, nor excavation performed, without prior written approval from ARRC. Permittee's use of the Permit Area shall not interfere with the construction, maintenance, repair, use or operation of any railroad facility (except to the extent authorized by Permittee's above-described Temporary Construction Permit or required by the Industry Track Agreement), drainage ditch, or related facilities or the facilities of other permittees or licensees which may be located upon, over or under the Permit Area or adjacent areas.

5. <u>Term; Anticipated Renewal</u>. This Permit shall be for a term of five (5) years <u>beginning as of September 15, 2003 and ending on September 14, 2008</u>. Any continued use of the Permit Area by Permittee after the expiration of the original term, absent prior ARRC approval, shall be under the same terms and conditions as this Permit. Permittee may abandon the Permit Area and give up all rights under this Permit at any time, however, Permittee's obligation to pay an annual fee, and any other affirmative obligations of Permittee under this Permit, will continue until Permittee has given written notification to ARRC that it is abandoning all rights under this Permit, and in addition, has removed any personal property from the Permit Area and restored it pursuant to Paragraph 11 of this Permit.

The parties anticipate that Permittee will desire to renew or extend the Permit for an additional time period consistent with the expected duration of the resource extraction located on Permittee's adjacent real property. Permittee understands and acknowledges that, in such event, it is likely that ARRC will require execution of a lease rather than a permit, and that public notice and approval of ARRC's Board of Directors will be necessary. Permittee is advised that the lease process can take up to a year to complete, and understands that it should determine the extent of its need for the Permit Area and begin the lease application process in sufficient time to allow completion before the termination of this Permit.

6. <u>Termination</u>. This Permit may be terminated (a) by either party upon one-hundred eighty (180) days' prior written notice to the other party; (b) at any time by mutual written consent of the parties; or (c) at the option of ARRC, upon thirty (30) days prior written notice of a default by Permittee in the performance of any obligation hereunder. ARRC's notice of default must describe the event constituting the default and shall specify the actions required to cure the default, and Permittee shall have said 30-day period within which to cure the default. If Permittee cures the default with the 30-day period, no termination shall occur.

The obligations contained in Paragraphs 8-11 shall survive any such termination.

7. <u>Permit Fee</u>. As consideration for the use of the Permit Area, Permittee shall pay an annual fee of <u>Two Thousand Six Hundred Twenty-seven and 20/100 Dollars ($2,627.20)</u>, in advance. This fee is calculated on the basis of ARRC's current minimum permit fee rate of $.05 per square foot. Any use of the Permit Area beyond the five-year term hereof will be assessed at a rate consistent with ARRC's lease policy.

8. <u>Assumption of Risk; Indemnification</u>. Permittee assumes complete liability for any and all claims resulting from the use of the Permit Area by Permittee, its agents, employees, invitees or licensees or from its or their activities in or about or relating to the Permit Area. Permittee hereby releases, and agrees to indemnify, defend, and hold ARRC harmless from and against all claims, demands, liabilities, costs, expenses, judgments and consensual settlements for loss of or damage to property, and for injury to or death of any person (including but not limited to the property and employees of Permittee and ARRC) when arising or resulting from breach of any of the provisions of this Permit by Permittee, or from the use of the Permit Area by Permittee, its agents, employees, invitees or licensees, or from its or their activities in or about or relating to said Permit Area or other property of ARRC during the term of this Permit, unless the personal injury or property damage results from the sole negligence of ARRC.

9. <u>Insurance</u>.

    (a) <u>Liability Insurance</u>. During the entire Permit term, and during any holdover thereafter, whether or not authorized by ARRC, Permittee shall keep in full force and effect a policy or policies of general liability insurance acceptable to ARRC protecting against liability for property damage or personal injury with respect to the Permit Area and the activities of Permittee in and about the Permit Area and under the related Industry Track Agreement referenced in Paragraph 1 above (which shall include an environmental impairment liability endorsement) in an amount of not less than <u>Two Million Dollars ($2,000,000</u> per occurrence and <u>Four Million Dollars ($4,000,000)</u> aggregate; provided, however, that no such limit shall in any way limit Permittee's liability or be construed as a representation of sufficiency to fully protect ARRC or Permittee. The policy or policies purchased pursuant to this paragraph shall name both ARRC and Permittee as insureds with respect to the Permit Area and the activity conducted by Permittee on the Permit Area and on adjacent property under the Industry Track Agreement.

    (b) <u>Policy Provisions</u>. Each policy of insurance described in Paragraph 9(a) of this Permit shall:

    (i) Provide that the liability of the insurer thereunder shall not be affected by, and that the insurer shall not claim, any right of setoff, counterclaim, apportionment, proration, or contribution by reason of any other insurance obtained by or for ARRC, Permittee, or any person claiming by, through, or under any of them.

    (ii) Provide that such policy requires thirty (30) days notice to ARRC of any proposed cancellation or expiration thereof and that such policy may not be canceled, whether or not requested by Permittee, unless the insurer first gives not less than thirty (30) days' prior written notice thereof to ARRC.

---

(iii) Contain a waiver by the insurer of any right of subrogation to proceed against ARRC or against any person claiming by, through, or under ARRC.

(c) <u>Proof of Insurance</u>. Permittee shall deliver to ARRC certificates of insurance on or before the effective date of this Permit or at another date as agreed to in writing by ARRC. Additionally, Permittee shall deliver to ARRC photocopies of the policy or policies of insurance, certificates of insurance, or copies of endorsements as requested by the ARRC from time to time.

10. <u>Compliance with Governmental Requirements; Pollution Indemnity</u>. Permittee shall, at its expense, comply with all applicable laws, regulations, ordinances, rules and orders, regardless of when they become or became effective, including without limitation, those relating to health, safety, noise, hazardous substances, environmental protection, hazardous and non-hazardous waste disposal, and water and air quality, and furnish satisfactory evidence of such compliance upon request of ARRC; <u>provided, however</u>, Permittee shall not be liable under this Paragraph 10 for conditions existing prior to its entry onto the Permit Area. Should any release, discharge, leakage, spillage, emission, or pollution of any type occur upon or from the Permit Area due to Permittee's use or occupancy thereof, Permittee shall, at its expense, be obligated to clean the Permit Area to the satisfaction of the ARRC and any governmental body having jurisdiction thereover.

In addition to the indemnity contained in Paragraph 8 hereof (but not in limitation thereof), Permittee specifically agrees to indemnify, hold harmless and defend ARRC against all liability, cost and expense (including without limitation any fines, penalties, judgments, litigation costs and attorneys' fees) incurred by ARRC as a result of Permittee's breach of this Paragraph 10, or as a result of any such release, discharge, leakage, spillage, emission or pollution, regardless of whether such liability, cost or expense arises during or after the Permit term, unless such liability, cost or expense is caused solely by the negligence of ARRC.

11. <u>Restoration of Permit Area on Termination</u>. Upon the expiration or termination of this Permit, the Permittee shall remove from and off the Permit Area all property owned or controlled by Permittee and restore the Permit Area to a condition satisfactory to ARRC; and, upon failure so to do, ARRC may perform such work at Permittee's expense. The parties acknowledge and agree that railroad subgrade (i.e. fill material and ballast) is not subject to removal under this Paragraph 11. Any debris, waste materials or contaminated soils arising from the permitted activity shall be removed from the Permit Area by Permittee, and upon expiration or termination of this Permit, the Permit Area will be restored as nearly as possible to its original condition by Permittee. To this end (but not in limitation of the foregoing), Permittee acknowledges that ARRC may obtain a site assessment at Permittee's expense upon termination or expiration of the Permit term to determine whether Permittee has fulfilled its obligation to return the premises to their original condition. Permittee shall promptly remedy any contamination caused or suffered to occur by Permittee in the Permit Area and disclosed by such site assessment and pay for additional site testing until the results are in compliance with the requirement of this Paragraph 11.

12. <u>No Warranties</u>. ARRC does not warrant or represent that the Permit Area is safe,

---

ARRC Contract No. 8518  
Colaska, Inc. d/b/a QAP

Special Land Use Permit  
Page 4 of 6

**EXHIBIT A**  
**PAGE 4 OF 18**

healthful or suitable for the purpose for which it is to be used under this Permit. Absence of markers does not constitute a warranty by ARRC of no subsurface installations.

13. <u>Miscellaneous</u>.

(a) This Permit is personal to Permittee and may not be assigned or transferred in any manner, including by operation of law, without the prior written consent of ARRC, which may be withheld at ARRC's discretion but not arbitrarily or capriciously.

(b) The captions of paragraphs in this Permit are for convenience of reference only and shall not be used in the construction of any term hereof.

(c) The terms of this Permit shall inure to the benefit of any successor or assign of ARRC, and, subject to the provisions of Paragraph 13(a), to the successors and assigns of Permittee.

(d) This Permit and the Industry Track Agreement represent the entire agreement of the parties with respect to the subject matter hereof, and these documents shall be interpreted consistently with each other. This Permit may not be modified except by an agreement in writing signed by both parties.

(e) Time is of the essence with respect to any obligations to be performed under this Permit.

14. <u>Special Conditions</u>: n/a.

ALASKA RAILROAD CORPORATION

Dated: 5/17/05    By: _____
                      Karen Morrissey
                      Director, Real Estate

COLASKA, INC., d/b/a QAP

Date signed: 5/23/05    By: _____
                        Title: Vice President

<u>Attachments</u>:
✓ Exhibit A - Site Map
✓ Exhibit B - Standard Specifications (06/03 rev.)

---

STATE OF ALASKA           )
                          )ss.
THIRD JUDICIAL DISTRICT   )

The foregoing instrument was acknowledged before me this 17th day of May, 2005, by <u>Karen J. Morrissey</u>, the <u>Director, Real Estate</u> of the <u>Alaska Railroad Corporation</u>, a public corporation created by Alaska Statute 42.40, on behalf of the corporation.

_____
Notary Public in and for Alaska
My Commission expires: 8-22-2006

OFFICIAL SEAL
State of Alaska
PHYLLIS C. JOHNSON
NOTARY PUBLIC

STATE OF ALASKA           )
                          )ss.
THIRD JUDICIAL DISTRICT   )

The foregoing instrument was acknowledged before me this 23 day of MAY, 2005, by JON FUGLESTAD, the V. PRESIDENT of Colaska, Inc., d/b/a QAP, an Alaska corporation, on behalf of the same.

_____
Notary Public in and for Alaska
My Commission expires: 04/18/06

ARRC Contract No. 8518                              Special Land Use Permit
Colaska, Inc. d/b/a QAP                                       Page 6 of 6

EXHIBIT A
PAGE 6 OF 18

Special Land Use Permit – Quality Asphalt Paving
Contract No. 8518
Area = 52,544sf±



TIPPLE PERMIT
52,544 SF±

MP 165±

Alaska Railroad Corporation
Quality Asphalt Paving
Contract No. 8518
Wasilla – MP 165±      EXHIBIT A

| Date: 05/16/2005 | Scale: 1" = 200' |
| Dwg. By: mdg | File: r:\permits\wasilla\8518-p |

# STANDARD SPECIFICATIONS FOR WORK ON RAILROAD PROPERTY
(For ARRC Lessees, Permittees and their Contractors)

Section 1.   Definition of Terms

Section 2.   General Requirements

Section 3.   Safety Requirements

Section 4.   Insurance Requirements

Section 5.   Notice

Section 6.   Flag Protection and Protection of ARRC Traffic

Section 7.   Train Delays

Section 8.   Protection of ARRC Communication Lines

Section 9.   Road Crossings

Section 10.  Power and Communication Lines

Section 11.  Underground Utilities

Section 12.  Open Trenching

Section 13.  Excavations

Section 14.  ARRC Inspectors

Section 15.  Use of Explosives

Section 16.  Snow Removal

Section 17.  Clean-up

EXHIBIT B
Standard Specifications for Work on Railroad Property
(rev. 06/03/03)
Page 1 of 11

EXHIBIT A
PAGE 8 OF 18

SECTION 1.

DEFINITION OF TERMS

| | |
|---|---|
| ARRC | Alaska Railroad Corporation, P.O. Box 107500, Anchorage, AK 99510-7500. |
| ARRC Property | all lands owned or withdrawn for the use of the ARRC, including the ARRC's track right-of-way and communications pole line right-of-way. |
| Chief Engineer | the person employed by the ARRC as head of its Engineering Department or Branch, or his/her authorized representative. |
| Contractor | any agent of the Permittee, including Contractors or subcontractors employed to construct, reconstruct, operate and/or maintain the Facility. The term "Contractor" shall be synonymous with the term "Permittee" when the Permittee performs the construction, reconstruction, operation and/or maintenance of the Facility with its own personnel. |
| Director, Real Estate | the person authorized by the ARRC to execute contractual real estate agreements on behalf of the ARRC. |
| Facility | any improvements owned by the Permittee/Contractor which are to be placed on ARRC property in accordance with written permission executed by ARRC and Permittee. |
| Telecommunications Supervisor | the person employed by the ARRC as head of its Telecommunications Department or Branch, or his/her authorized representative. |
| Permittee/Contractor | the person, company or governmental agency to whom the right to enter upon ARRC Property was given in the form of written permit or contract executed by the ARRC and Permittee/Contractor. |
| Track Work | all work on the line from the top of subgrade to the top of rail, including geotextile, when required. |
| Track Materials | all hardware, excluding signals and controllers, associated with the running of a railroad. |

Standard Specifications for Work on Railroad Property
(rev. 06/03/03)

EXHIBIT A
PAGE 9 OF 18

EXHIBIT B
Page 2 of 11

## SECTION 2. GENERAL REQUIREMENTS

2.1  All construction, reconstruction, operation, and maintenance on ARRC Property shall be performed incompliance with these Standard Specifications for Work on Railroad Property, including all revisions thereto.

2.2  Failure to comply with these Standard Specifications for Work on Railroad Property shall result in the demand of ARRC to suspend all work on ARRC Property.

2.3  All work on or about ARRC Property shall be performed by experienced personnel in a safe and workmanlike manner in keeping with approved ARRC practices, and as specified herein. ARRC traffic and property shall be protected at all times.

2.4  The safety and continuity of the operation of the traffic of ARRC shall be of first importance and shall be at all times protected and safeguarded. The Permittee/Contractor and its subcontractors shall be required to perform and arrange their work accordingly. Whenever, in the opinion of the Chief Engineer or his or her representatives, the work or its performance may affect or involve the safety of ARRC's facilities and/or operation of its railroad, the method of doing such work shall first be submitted by the Permittee/Contractor to the Chief Engineer for his/her approval, without which it shall not be commenced or prosecuted. The approval of the Chief Engineer, when given, shall not be considered as a release from responsibility or liability for any damage which ARRC may suffer, or for which it may be liable, as a result of the acts or omissions of the Permittee/Contractor, its subcontractors or employees.

2.5  Whenever, in the opinion of the Chief Engineer, the construction may cause a hazard to the safe operation of ARRC, ARRC may, in its discretion, place at the site of the work the required number of qualified employees to protect its operations. The providing of such employees and such other precautions as may be taken shall not relieve the Permittee/Contractor and its subcontractors from liability for the payment of damages caused by their operations. ARRC shall be the sole judge of the necessity for, and as to the number and classification of employees required. The Permittee/Contractor shall reimburse ARRC for the cost and expense incurred in providing such employees.

EXHIBIT B
Standard Specifications for Work on Railroad Property
(rev. 06/03/03)
EXHIBIT A
PAGE 10 OF 18
Page 3 of 11

## SECTION 3. SAFETY REQUIREMENTS

3.1  The safety of personnel, property, rail operations, and the public is of paramount importance in the prosecution of any work on ARRC Property. The Permittee/Contractor shall comply with all Federal, State and local governmental regulations (e.g. OSHA, NESC, etc.) applicable to the construction, installation, or maintenance of any Facility. As reinforcement and in furtherance of overall safety measures to be observed by Permittee/Contractor (and not by way of limitation), the following special safety rules shall be followed while working on ARRC Property. Further railroad safety information may be obtained from the ARRC Safety Office at 907-265-2440. Safety information is also available on the ARRC website at www.akrr.com.

3.2.  ARRC flag protection is required before any activity can occur on or near a railroad operating facility such as a track, yard, bridge or shop building. For incidental work, such as surveying or inspection, an ARRC furnished flagman will provide a safety briefing prior to the commencement of the work  For any activity involving a disturbance or potential disturbance to the track, track embankment, or any railroad facility, ARRC may require the Permittee/Contractor to submit a specific Railroad Safety Plan prior to startup. Projects which involve activities which cross the tracks or are longitudinal to the tracks will require a specific Railroad Safety Plan and a one hour ARRC provided training course for Permittee/Contractor's project supervisors prior to the initiation of work on ARRC Property. Specific information on Railroad Safety Plans may be obtained from the ARRC Safety Office at 907-265-2440.

3.3  The Permittee/Contractor shall arrange for ARRC flag protection when performing any work within 20 feet of any track. All work within 20 feet of the track shall cease when a train passes and all Permittee/Contractor employees shall maintain a distance of at least 20 feet from the track until the train has safely passed. In addition, any work that could come within 20 feet of the track will cease when a train passes. For example, crane or pile driving activities shall stop when trains pass when the maximum boom and suspended load radius can come within 20 feet of the tracks. Pile driving shall not be done when trains are passing the work site. Vehicles and other construction equipment shall not be operated or parked closer than 20 feet from any track without ARRC flag protection.

3.4  In the event Permittee/Contractor will be performing construction or other activities on or in close proximity to a railroad track, the Permittee/Contractor shall be responsible for compliance with applicable Federal Railroad Administration's Roadway Worker Protection ("RWP") regulations (49 CFR 214, Subpart C) if its employees qualify as "Roadway Workers"[1]. Under 49 CFR 214, Subpart C, railroad contractors are responsible for the training of their employees on these regulations. All RWP related Work shall be conducted in strict compliance with the RWP safety standards set forth in 49 CFR 214, Subpart C and the Permittee/Contractor will be required to submit a Railroad Safety Plan to ARRC to demonstrate compliance with said safety standards prior to beginning any RWP related Work.

3.5  In the event Permittee/Contractor will be performing construction or other activities on a railroad bridge, the provisions of 49 CFR 214 regarding bridge worker safety shall apply. All bridge related work shall be conducted in strict compliance with the bridge worker safety standards set forth in 49 CFR 214 and the Permittee/Contractor will be required to submit a Railroad Safety Plan to ARRC to demonstrate compliance with said safety standards prior to beginning any bridge related work.

---

[1] A Roadway Worker is any employee of a railroad, or of a contractor to a railroad, whose duties include inspection, construction, maintenance, or repair of railroad track, bridges, roadway, signal and communication systems, electric traction systems, roadway facilities, or roadway machinery on or near track or with the potential of fouling a track.

## SECTION 4. INSURANCE REQUIREMENTS

4.1 The Permittee/Contractor shall procure and maintain at all times while performing work on ARRC Property, and be covered by the types of insurance with the minimum limits as specified in Section 4.4.

4.2 Each policy specified in Section 4.4 shall be: (1) endorsed to include ARRC as an additional named insured with respect to the performance of the work; (2) endorsed whereby the insurance company will notify ARRC of any material change, cancellation, non-renewal or expiration of the insurance policy in writing not less than thirty (30) days prior to the effective date; (3) endorsed with a waiver of subrogation rights in favor of ARRC; and (4) endorsed with the Alaska Suit Endorsement.

4.3 Prior to commencement of any work on ARRC Property, the Permittee/Contractor, shall deliver to ARRC certificate(s) of insurance showing evidence of the insurance required in Section 4.4.

4.4 <u>Alaska Railroad Corporation Minimum Insurance Requirements</u>.

    a. Commercial General Liability insurance with limits not less than $2,000,000 per occurrence and $4,000,000 aggregate for Bodily Injury and Property Damage, including coverage for Premises and Operations Liability, Products and Completed Operations Liability, Contractual Liability, and Broad Form Property Damage Liability. Coverage shall not contain any exclusions of Explosion, Collapse, Underground, or Rail Operations.

    b. Automobile Liability insurance on all owned, non-owned, hired and rented vehicles with limits of liability of not less than $1,000,000 Combined Single Limit for Bodily Injury and Property Damage per each accident or loss.

    c. Worker's Compensation insurance in accordance with the statutory coverages required by the State of Alaska and, where applicable, insurance in compliance with any other statutory obligations, whether State or Federal, pertaining to the compensation of injured employees assigned to the Work, including but not limited to Voluntary Compensation, Federal Longshoremen and Harbor Workers Act, and the Federal Employers Liability Act.

    d. If any part of the work to be performed on ARRC Property is located within one hundred feet (100') of a railroad track, then the Permittee/Contractor shall also obtain Railroad Protective Liability insurance (Alaska Railroad Corporation as named insured) with limits of liability of not less than $5,000,000 Combined Single Limit for Bodily Injury and Property Damage per each accident or loss.

Standard Specifications for Work on Railroad Property
(rev. 06/03/03)

EXHIBIT B
Page 5 of 11

EXHIBIT A
PAGE 12 OF 18

## SECTION 5. NOTICE

5.1    A pre-construction meeting shall be held with ARRC's Chief Engineer and representatives of the Permittee/Contractor and subcontractors prior to the commencement of any work on ARRC Property by the Permittee/Contractor or its subcontractors.

5.2    The Permittee/Contractor shall give written notice to the Chief Engineer not less than ten (10) days in advance of the commencement of any construction, reconstruction or major maintenance activity on ARRC Property, in order that the necessary arrangements may be made for the protection of ARRC's operations. This notice shall include a description of the proposed work on ARRC Property, schedule of work, and the names of any Permittee/Contractor's subcontractor who may also be working on ARRC Property.

## SECTION 6. FLAG PROTECTION AND PROTECTION OF ARRC TRAFFIC

6.1    Whenever ARRC flag protection is required, it will be provided by ARRC at Permittee/Contractor's expense. ARRC flag protection is to insure the safe movement of trains and other rail traffic and shall be done in strict accordance with the ARRC rules on flagging. A minimum of 48 hours prior notice is required for ARRC to provide flag protection.

6.2    ARRC will, during the progress of the work, utilize as many qualified flag people as in the opinion of the ARRC may be required for the adequate protection of ARRC traffic. All expense for providing such flagpersons shall be paid by the Permittee/Contractor to ARRC.

6.3    The Permittee/Contractor shall arrange with ARRC to keep itself informed on the time of arrival of all trains and shall stop any of Permittee/Contractor's operations which might be or cause a hazard to the safe passage of the train past the site of the work from ten (10) minutes before the expected arrival of the train until it has safely passed.

6.4    Track outages will only be approved in exceptional cases for limited durations. Prior to a proposed track outage, the Permittee/Contractor shall submit a closure plan to ARRC. The plan will describe the work to be accomplished, the equipment, manpower and other resources required, and the work schedule. Once approved by ARRC, the Permittee/Contractor shall follow the plan. ARRC reserves the right to assume control of the work to reestablish rail service if the schedule is not met. Permittee/Contractor shall bear all costs and damages which may result from failure to meet the closure schedule, in addition to the train delay charges provided for herein.

Standard Specifications for Work on Railroad Property
(rev. 06/03/03)

EXHIBIT B
Page 6 of 11

EXHIBIT A
PAGE 13 OF 18

## SECTION 7. TRAIN DELAYS

7.1 All work on ARRC Property shall be conducted in such a manner as to prevent delays to trains or other rail traffic operated by ARRC.

7.2 Should any of the Permittee/Contractor's or its subcontractor's actions or activities cause delays to trains or other rail or water traffic, the agreed amount of liquidated damages shall be at the following rates and shall be collected from the Permittee/Contractor by ARRC.

| | |
|---|---|
| Passenger trains each: | $50 per minute of delay, 60-minute minimum charge. |
| All other rail traffic: | 50 per minute for each delay over five minutes, 30-minute minimum charge. |
| Rail barges, or other Connecting Carrier Vessels: | No charge for delays of one hour or less; $1,000 per hour for each hour or any part of an hour thereafter with a minimum charge of $6,000. |

7.3 Delay time will be taken from the train sheet in ARRC's Dispatcher's Office, Anchorage (907-265-2504) for all delays and such train sheet shall be the official document by which the length of time a train is delayed will be determined. If another crew is needed to relieve the original crew, the charge shall also apply to the second crew. If such delay causes a water carrier to miss a sailing, the liquidated damage computation of time covering the period of time to the next possible sailing time shall be in addition to the length of time determined by said train sheet.

## SECTION 8. PROTECTION OF ARRC COMMUNICATION LINES

8.1 All work on ARRC Property shall be conducted in such a manner as to protect ARRC's communication facilities at all times from outages resulting directly or indirectly from the Permittee/Contractor's or its subcontractor's operations.

8.2 Should any of the Permittee/Contractor or its subcontractor's operations cause outages to said communications facilities, the agreed amount of liquidated damages shall be at the following rates and shall be collected from the Permittee/Contractor:

| | |
|---|---|
| Open wire communication circuits: | $1.00 per minute per circuit |
| Communication cable: | $1.00 per minute per cable |

8.3 A minimum charge of $250.00 will be made for each outage plus the total repair costs. The outage time shall be that as established by ARRC's Test Board, Anchorage.

8.4 There shall be no equipment operated or excavation made within fifteen (15) feet of any ARRC communication pole guy, anchor, or other communications apparatus unless authorized in advance by the Telecommunications Supervisor.

Standard Specifications for Work on Railroad Property
(rev. 06/03/03)

EXHIBIT B
Page 7 of 11

EXHIBIT A
PAGE 14 OF 18

## SECTION 9. ROAD CROSSINGS

9.1   Whenever automatic railroad crossing signals are in the work area, these signals must remain in operating condition at all times. If, as a result of the Permittee/Contractor's or subcontractor's activities the signals become inoperable, the crossing shall be continuously flag protected until the signals are again operable. See Section 6 for flagging specifications.

9.2   When regular railroad crossings are used as haul routes inside or outside the work area, flagpersons shall be provided by the Permittee/Contractor for said crossings in all situations at the discretion of the ARRC.

9.3   Temporary road crossings may be installed provided the Permittee/Contractor has acquired from ARRC a temporary road crossing permit for said crossing. If the crossing is not shown on the project plans as approved by ARRC, then it will be at ARRC's sole discretion whether to allow a later-requested crossing.

9.4   The temporary road crossing shall be constructed to the length and the standards specified in the temporary road crossing permit. All protective signs required by ARRC shall be provided and properly maintained by the Permittee/Contractor. The temporary road crossing shall be installed under ARRC flag protection in accordance with Section 6 of these specifications.

9.5   The flange ways of all road crossings used by the Permittee/Contractor or its subcontractor as haul routes or temporary road crossings shall be kept clean and free of gravel at all times and shall otherwise be maintained to the satisfaction of the Chief Engineer.

9.6   When a temporary road crossing is in use, ARRC flag protection shall be provided at all times. See Section 6 for specifications.

9.7   When a temporary or private road crossing is not in use, the Permittee/Contractor shall provide suitable barricades (gates with padlocks, posts driven into the ground, etc.) to prevent vehicular access to the crossing.

9.8   When not in use during the winter season, the temporary road crossing shall be removed. Upon completion of the work or termination of the crossing permit, the temporary crossing shall be removed and the area restored to its original condition.

9.9   The Permittee/Contractor agrees that all others using the private road crossing, except ARRC and its employees, shall be considered agents of the Permittee/Contractor.

9.10  Sight Triangles at road crossings shall be maintained by Permittee/Contractor free of vegetation and other obstructions to vision in accordance with the table entitled "Sight Triangle Distance" attached and as otherwise established and revised from time to time by ARRC.

9.11  Temporary public road crossings must be included in a traffic control plan submitted by the Permittee/Contractor to Alaska Department of Transportation (ADOT) for review and approval prior to constructing the crossing.

EXHIBIT B
Standard Specifications for Work on Railroad Property
(rev. 06/03/03)
Page 8 of 11
EXHIBIT A
PAGE 15 OF 18

SECTION 10. <u>POWER AND COMMUNICATION LINES</u>

10.1  All power and communication lines shall be designed and constructed in accordance with the current edition of the National Electric Safety Code (NESC).

10.2  Underground power and communication lines shall be installed in accordance with Section 11 of these specifications. Whenever an underground power or communication line crosses underneath a track, a casing pipe shall be installed for carrying such lines.

10.3  The minimum clearance above the top of rail of ARRC track shall be in accordance with the handbook referenced in Section 11.1, plus six (6) inches to allow for future grade raises.

10.4  The minimum clearance above ARRC communication lines shall be in accordance with the handbook referenced in Section 11.1.

10.5  Additional lines may not be added, or the characteristics of the line(s) changed without the prior written approval of ARRC's Director, Real Estate or Chief Engineer.

10.6  Wires shall be strung across ARRC tracks only when ARRC flag protection is provided in accordance with Section 6 of these specifications.

10.7  No wires shall be strung across ARRC's communications lines without first receiving prior written approval from ARRC's Telecommunication Supervisor, and such work must be accomplished only at a time and in a manner prescribed by said Telecommunication Supervisor.

SECTION 11. <u>UNDERGROUND UTILITIES</u>

11.1  All underground utilities, including culverts, pipelines, and underground power and communication lines, on ARRC Property shall conform to the current American Railway Engineering Association (AREA) / American Railroad Engineering and Maintenance-of-way Association (AREMA) Specifications.

11.2  Unless another method is authorized in advance and in writing by the Chief Engineer, all underground utilities shall be installed under tracks and roads by boring, jacking or tunneling.

11.3  Boring, jacking or tunneling shall be done under ARRC tracks only when ARRC flag protection is provided in accordance with Section 6 of these specifications.

11.4  The proposed plan for boring, jacking or tunneling shall be approved by the Chief Engineer prior to commencing the operation.

11.5  All boring, jacking or tunneling headings shall be continuously protected against any loss of ground material by shoring and/or cribbing as necessary.

Standard Specifications for Work on Railroad Property
(rev. 06/03/03)

EXHIBIT B
Page 9 of 11

EXHIBIT A
PAGE 16 OF 18

## SECTION 12. OPEN TRENCHING

12.1  Only when authorized in advance and in writing by ARRC shall any portion of the track be removed to allow trenching for installation of the Facility.

12.2  If allowed to open trench, the track may be removed from service only at the time authorized by the Chief Engineer and shall be restored to service within the time period specified by the Chief Engineer. Should the track not be restored to service within the time period specified, the agreed amount of liquidated damages shall be at the rate specified in the written authorization allowing the open trenching or the liquidated damages in accordance with Section 7 of these specifications, whichever is greater, and shall be collected from the Permittee/Contractor.

12.3  All track work shall be accomplished by qualified track persons.

12.4  Only that portion of the track structure necessary to excavate, stockpile and install the Facility shall be removed. All track material removed shall be handled, stockpiled and relayed in a manner to avoid damage. Any material which may be damaged shall be replaced by the Permittee/Contractor at its own expense.

12.5  The backfill of the trench under the track and in the road bed prism shall be of the same type of material as taken out, except the top 2 feet shall be clean pit run gravel. Backfilling and compaction shall be in one-foot lifts with a compaction of 95% of maximum density in the area affecting the roadbed prism.

12.6  The ballast used in replacing the track shall be equal in depth and quality as that which was removed. The track shall be relayed and brought to original grade in accordance with standard ARRC practices. The track shall be resurfaced as often as necessary for a period of 12 months after completion of construction to remove any settlement that may have occurred.

## SECTION 13. EXCAVATIONS

13.1  Unless authorized in advance and in writing by ARRC, the top of any excavation shall not be within 20 feet of the centerline of any track; nor shall any excavation exceed ten (10) feet in depth regardless of its proximity to track.

13.2  No water shall be allowed to stand in open excavations in the track area.

13.3  Bridging and shoring shall be adequate to safely carry ARRC traffic and the decision of the Chief Engineer pertaining to same shall be final.

13.4  All open excavations shall be continuously protected by flags, flares, barricades or watchpersons, as directed by ARRC.

13.5  No excavation shall be left open more than three days, unless authorized by the Chief Engineer.

13.6  ARRC embankments and cut slopes shall not be disturbed any more than necessary to accommodate the construction and shall be left in a stabilized condition.

13.7  ARRC ditches, culverts and roadways shall be kept clean and free of rock, gravel, construction debris and equipment at all times.

Standard Specifications for Work on Railroad Property
(rev. 06/03/03)

EXHIBIT B
Page 10 of 11

EXHIBIT A
PAGE 17 OF 18

SECTION 14. ARRC INSPECTIONS

14.1 ARRC may furnish an inspector during the periods of construction on ARRC Property. The ARRC inspector will inspect the removal and replacement of tracks, excavation, backfill, necessary bridging for tracks, shoring, flagging, lighting, clearances, etc., when necessary. The ARRC inspector will work directly with the representative of the Permittee /Contractor and the decision of the ARRC inspector in matters pertaining to ARRC operations and safety shall be final. In the event more than one shift is worked, an ARRC inspector will be required for each shift. Presence or absence of an ARRC inspector shall not relieve the Permittee /Contractor of liability for damage done to property of ARRC, or the property of ARRC lessees or permittees having installations on ARRC Property. All ARRC cost and expense for furnishing said inspector(s) shall be collected from the Permittee /Contractor.

SECTION 15. USE OF EXPLOSIVES

15.1 The use of explosives shall be done in compliance with all applicable Federal, State and local laws and ordinances regarding same.

15.2 No blasting of any kind will be permitted unless the Permittee/Contractor thoroughly safeguards the movement of trains and other rail traffic and personnel in the area where such blasting is being conducted. Before blasting, ARRC flag protection in accordance with Section 6 of these specifications shall be provided on each side of the blast area by the Permittee/Contractor. This flag protection shall not be removed until the track is inspected for damage from the blast.

SECTION 16. SNOW REMOVAL

16.1 Snow removal operations shall be conducted in such a manner as to not place snow (1) upon the tracks of ARRC; (2) where it interferes with the normal operation of the automatic crossing signals; or (3) where it impairs the visibility of either highway or rail traffic at the crossing.

16.2 Snow removal operations shall be conducted in accordance with Section 3 of these specifications.

SECTION 17. CLEAN-UP

17.1 At all times, all work and activities on ARRC Property shall be accomplished in such a manner as to keep the ARRC Property in a neat, orderly and safe condition satisfactory to ARRC.

17.2 Upon completion of Permittee/Contractor's work, all equipment and unused materials shall be removed and the ARRC Property shall be left in a neat and clean condition satisfactory to ARRC.

17.3 Should the Permittee/Contractor or its subcontractor fail to comply with Section 17.1 and 17.2 above, ARRC may perform the required clean-up. All ARRC costs and expenses for performing this work shall be collected from the Permittee /Contractor.

Standard Specifications for Work on Railroad Property
(rev. 06/03/03)

EXHIBIT B
Page 11 of 11

EXHIBIT A
PAGE 18 OF 18