Douglas C. Perkins, ASBA No. 8612155
HARTIG RHODES HOGE & LEKISCH P.C.
717 K. Street
Anchorage, Alaska 99501
Telephone:  907-276-1592
Facsimile:  907-277-4352
Email:  dp@hartig.com
Attorneys for DeEtt A. Coyle and Edward Coyle

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA AT ANCHORAGE**

| | |
|---|---|
| DEETT A. COYLE and EDWARD COYLE,<br><br>   Plaintiffs,<br><br> vs.<br><br>COLASKA, INC.; and ALASKA RAILROAD CORPORATION,<br><br>   Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) **Case No. A05-0221 CV (TMB)** |

**OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT
AND CROSS-MOTION FOR REMAND TO STATE COURT**

**I.  Introduction**

Plaintiffs DeEtt A. Coyle and Edward Coyle ("Mr. and Mrs. Coyle"), by and through counsel of record, hereby respond in opposition to the motion for partial summary judgment (Docket #21) filed by Defendant Alaska Railroad Corporation ("ARRC"), in which ARRC seeks rulings that this case:  (1) is preempted by federal law, and (2) falls within the exclusive jurisdiction of the Surface Transportation Board.  The motion is joined by Defendant Colaska Inc. ("Colaska").  For the reasons discussed below, the motion should be denied.

Opposition to Motion for Partial Summary Judgment
and Cross-Motion for Remand to State Court
*Coyle v. Colaska, Inc., Alaska Railroad Corporation,*  Case No. A05-0221 CV (TMB)     Page 1 of 17

Further, for the reason that the facts and claims at issue do not invoke the jurisdiction of the Surface Transportation Board, the Court is without subject matter jurisdiction over this case. Therefore, an order should be entered remanding the case to Alaska state court.

## II.  Statement of Facts

In 1997, the Coyles purchased the Parks Highway property where they live, and where Mr. Coyle also runs a small sawmill business. The sawmill has no office, so Mr. Coyle transacts business with his customers outside their home, near the garage. ([First] Affidavit of C. Edward Coyle, dated 6/17/05, ¶ 2).[1]

When the Coyles bought their home and land, the property next to them contained tall, thick spruce trees, which provided a nice barrier from the sound of railroad cars passing by on the tracks immediately adjacent to the Coyle's property. The Coyles appreciated, however, and had no problem with, the fact that they lived "next door" to the railroad, on the west side, and the Parks Highway, to the east. In fact, Mr. Coyle saw rail and highway access as positive factors for his small sawmill business. ([First] Affidavit of C. Edward Coyle, dated 6/17/05, ¶ 3). For some time, in fact, Mr. Coyle bought old railroad ties from ARRC, which he then re-sold to the public. It was a simple matter for ARRC to drop off the old ties right there at his property. (Third Affidavit of C. Edward Coyle, dated March 28, 2006, ¶¶ 2-3).

---

[1] With the exception of the Third Affidavit of C. Edward Coyle, the originals of the four other affidavits filed in connection with this opposition, two by Mr. Coyle and two by Mr. Fuglestad, were filed previously in Alaska Superior Court in support of the Coyles' request for injunctive relief. Coyle's Third Affidavit is unsigned, so is filed with a notice and certificate of veracity. The signed original will be filed upon Mr. Coyle's return to the State.

Opposition to Motion for Partial Summary Judgment
and Cross-Motion for Remand to State Court
*Coyle v. Colaska, Inc., Alaska Railroad Corporation*,  Case No. A05-0221 CV (TMB)      Page 2 of 17

HARTIG RHODES
HOGE & LEKISCH
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE,
ALASKA
99501-3397
TELEPHONE:
(907) 276-1592

Earlier, in 1994, Colaska had purchased the property located just on the other side of the railroad tracks from the Coyles' property. ([First] Affidavit of Jon Fuglestad, dated 8/22/05, ¶ 9). On its property, beyond the spruce trees, Colaska operated the Meadow Lakes Gravel Pit. ([First] Affidavit of Jon Fuglestad, dated 8/22/05, ¶ 2)].

From their gravel pit, Colaska supplies gravel for many private and public construction projects, including such jobs as the Home Depot, the ongoing Parks Highway reconstruction near Wasilla, the C. Street extension in Anchorage, etc. In addition, Colaska competes with Alaska Sand & Gravel, selling aggregate from its pit directly to private customers, and for use in its operations manufacturing concrete for outside sales, residential and commercial. ([First] Affidavit of Jon Fuglestad, dated 8/22/05, ¶¶ 6-7, 14).

Until 2003, the Coyles had no problems with their neighbor, Colaska. But then, Colaska began clear-cutting the spruce trees next to the Coyles' property. ([First] Affidavit of C. Edward Coyle, dated 6/17/05, ¶ 4).

Colaska began clearing the spruce trees because it wanted to build a tipple loading facility which would permit it to load gravel (for Colaska's various private and public projects), from its pit directly into ARRC rail cars. ([First] Affidavit of Jon Fuglestad, dated 8/22/05, ¶10). Without the loading tipple, Colaska presumably would have had to continue as it had in the past, trucking its gravel to a rail-loading site at some other location.

As a condition of allowing Colaska to build the tipple, ARRC required that Colaska construct, to ARRC specifications, railroad siding (side tracks). This permits

HARTIG RHODES
HOGE & LEKISCH
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE,
ALASKA
99501-3397
TELEPHONE:
(907) 276-1592

Opposition to Motion for Partial Summary Judgment
and Cross-Motion for Remand to State Court
*Coyle v. Colaska, Inc., Alaska Railroad Corporation,*  Case No. A05-0221 CV (TMB)   Page 3 of 17

the "through" rail track to remain open while other rail traffic passes alongside a train stopped on the side tracks, such as for loading gravel.  The siding had to be long enough to hold an 80-car train with two locomotive engines, without blocking the nearby Pittman Road railroad crossing. ([First] Affidavit of Jon Fuglestad, dated 8/22/05, ¶11).

It is important to note that Mr. Coyle views the construction of the side tracks as enhancing the value of his quasi-commercial/residential property, such as if ARRC were to resume dropping off old railroad ties or other lumber products for use at Coyle's business site. (Third Affidavit of C. Edward Coyle, dated March 28, 2006, ¶4).

It is also noteworthy that, even though both ARRC and Colaska apparently both have an ownership interest in the side tracks which Mr. Coyle also considers a valuable feature of his property, ARRC admits that the tipple itself is exclusively owned and was built by Colaska. (Declaration of William R. Hupprich, ¶¶2-3, submitted with ARRC's subject motion).   ARRC also acknowledges that, even though Colaska co-owns the side tracks, ARRC has the right to use, and does use, these auxiliary rails for purposes of its own, i.e. they have value apart from gravel loading, and are used for purposes unrelated to Colaska's tipple use or gravel loading. (Declaration of William R. Hupprich, ¶4; see also Industry Track Agreement, ARRC's Exhibit B, at 4, subsection 5).

When Colaska began constructing its tipple in 2003, its workers and business customers began trespassing on, and across the Coyles' property from the Parks Highway access to the east.   "No trespassing" signs that had been erected to allay the trespassing began disappearing, and calls and letters to Colaska produced no relief from the trespasses. ([First] Affidavit of C. Edward Coyle, dated 6/17/05, ¶¶ 5-6).

HARTIG RHODES
HOGE & LEKISCH
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE,
ALASKA
99501-3397
TELEPHONE:
(907) 276-1592

Opposition to Motion for Partial Summary Judgment
and Cross-Motion for Remand to State Court
*Coyle v. Colaska, Inc., Alaska Railroad Corporation,*  Case No. A05-0221 CV (TMB)        Page 4 of 17

Then, once the tipple loading system was completed in 2004, Colaska began loading the 80-car trains with gravel, including during the middle of the night. ([First] Affidavit of C. Edward Coyle, dated 6/17/05, ¶¶ 7-9). It takes two to three hours to load the 80-car train, and Colaska has stated that the loading must be allowed to occur at any time, including between the hours of 9 p.m. at night until 8:00 a.m. the following morning. ([Second] Affidavit of Jon Fuglestad, dated 8/15/05, ¶¶ 9, 11, 12).

The noise level from the loading during the night has been measured as high as 97 decibels, at which level prolonged exposure can cause permanent hearing loss.[2] In addition, the dust from cars and trucks trespassing across the Coyles' property, as well as dust from Colaska's recently-escalated gravel pit excavation, and its tipple operations, is "unbearable" to the Coyles. ([First] Affidavit of C. Edward Coyle, dated 6/17/05, ¶¶ 9-11). For example, the gravel loading, running all night long, keeps the Coyles awake throughout the night, and has caused Mrs. Coyle to miss work the following day. ([Second] Affidavit of C. Edward Coyle, dated 8/8/05, ¶¶ 2-5).

After repeated requests, Colaska has refused to limit its operations to the daylight hours of 8:00 a.m. through 9:00 p.m., has refused to put up a sound or dust barrier, and has taken no apparent action to keep its employees and customers from trespassing across the Coyles' land. ([First] Affidavit of C. Edward Coyle, dated 6/17/05, ¶¶ 12-14).

Instead, Colaska contends that it will be economically harmed if it cannot continue to operate its tipple loading facility at any hour of the day or night that it deems

HARTIG RHODES
HOGE & LEKISCH
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE,
ALASKA
99501-3397
TELEPHONE:
(907) 276-1592

---

[2] National Institute on Deafness and Other Communication Disorders, http://www.nidcd.nih.gov/health/education/decibel/decibel_text.htm.

Opposition to Motion for Partial Summary Judgment
and Cross-Motion for Remand to State Court
*Coyle v. Colaska, Inc., Alaska Railroad Corporation,*  Case No. A05-0221 CV (TMB)    Page 5 of 17

appropriate. ([First] Affidavit of Jon Fuglestad, dated 8/22/05, ¶¶ 14-20, 23-30; [Second] Affidavit of Jon Fuglestad, dated 8/15/05, ¶¶ 6-20).  However, there is nothing in the record which shows that if the tipple were shut down at this loading site, Colaska would be prevented from transporting its gravel to some other rail loading location, such as that presumably used by Colaska prior to building its tipple a few years ago.

Likewise, although ARRC contends that its rail operations will be impacted if Colaska's tipple is shut down, there is nothing in the record which suggests that it will be prevented from transporting all of Colaska's product if it is delivered to another of ARRC's loading sites.

Finally, ARRC contends that its interest in the side tracks will be impacted if the Coyles succeed in this case.  However, ARRC admits it uses the side tracks for other purposes unrelated to Colaska's gravel sales, indeed the Industry Track Agreement preserves this right, and the Coyles do not seek to prevent ARRC from using its side tracks; indeed, the Coyles consider the presence of the side tracks to enhance the value of the business uses on their property.

### III.  Statement of the Case

On June 28, 2005, the Coyles brought this action, in Alaska Superior Court in Palmer, against Colaska.  The Coyles have never sued ARRC.  The Coyles moved for injunctive relief, and asserted claims against Colaska for trespass, nuisance, violations of noise laws, and for damages.   [Complaint, dated 6/28/05; Amended Complaint Before Answer, dated 8/4/05; and Second Amended Complaint Before Answer, dated 8/9/05].

HARTIG RHODES
HOGE & LEKISCH
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE,
ALASKA
99501-3397
TELEPHONE:
(907) 276-1592

Opposition to Motion for Partial Summary Judgment
and Cross-Motion for Remand to State Court
*Coyle v. Colaska, Inc., Alaska Railroad Corporation,*  Case No. A05-0221 CV (TMB)     Page 6 of 17

On September 7, 2005, Colaska answered the Coyles' complaints, and asserted for the first time the affirmative defense that the claims for relief against Colaska abridge the rights of ARRC (not then a party) under the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. § 10101 et seq.

On September 9, 2005, Colaska filed a Notice of Removal, contending that this case involves a federal question and that the Coyles' action and claims (then, still asserted only against Colaska) are preempted by the ICCTA.

On September 21, 2005, ARRC moved to intervene as a party defendant, contending that it has a protectable interest in this litigation because: (1) it co-owns (with Colaska) the side tracks, and (2) if Colaska's tipple is shut down, ARRC will no longer be able to transport gravel from Colaska's pit.

### IV.  Discussion

A. **This case should be remanded to state court because the Court lacks subject matter jurisdiction.**

This matter should be remanded because no federal question has been raised by the claims asserted in Plaintiffs' complaint.  The Court therefore lacks subject matter jurisdiction, which cannot be created by answer or affirmative defense, and which does not exist in any event, on the facts and law of this case.

28 USC  §1447(c), governs procedures after removal and provides that, if at any time before final judgment, it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.  An order remanding the case may require payment of costs and actual expenses, including attorney fees, incurred as a result of the removal.

HARTIG RHODES
HOGE & LEKISCH
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE,
ALASKA
99501-3397
TELEPHONE:
(907) 276-1592

Opposition to Motion for Partial Summary Judgment
and Cross-Motion for Remand to State Court
*Coyle v. Colaska, Inc., Alaska Railroad Corporation,*  Case No. A05-0221 CV (TMB)       Page 7 of 17

It is settled law that, with one exception discussed below, removal jurisdiction must be based on the claims asserted in the plaintiffs' complaint. Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Jurisdiction and Related Matters* vol. 14B, §3721, at 319-332 (3d ed., West 1998):

> The statute's limitation of the right of removal to defendants is related to the principle that the grounds for removal <u>must inhere in the plaintiff's claim, rather than be based on a defense or counterclaim</u>. Accordingly, the federal court must evaluate the substantive underpinnings of the plaintiff's claim in order to determine the propriety of removal. This typically will be done by examining the record of the state court action as it stands at the time the notice of removal is filed with the federal court. This means that when it is necessary, for determining a case's removability, a district court may go beyond the plaintiff's statement of his or her claim in the complaint and "pierce the pleadings"...

<u>Id</u>. at pp 319-324 (emphasis supplied). The removing defendant bears the burden of proving removal is proper. <u>Id</u>. at 324.

It often is said in the context of a dispute about removability, that the state-court plaintiff is the "master of his claim", which means that if he chooses not to assert a federal claim, or fails to join a party who could remove the entire action, or joins a non-diverse party, the defendant cannot remove the action to federal court on the ground that an alternative course of conduct, which would have permitted removal of the case, was available to the plaintiff. <u>Id</u>. at 332-333.

However, the plaintiff will not be permitted to defeat removal simply by protesting that the procedure in the federal court will be different than it would have been in the state court in which the action was instituted. In addition, removal will be held proper when the plaintiff has concealed a legitimate ground of removal by fraud, mistake, inadvertence, or artful pleading. According to the decided cases, the plaintiff may be

HARTIG RHODES
HOGE & LEKISCH
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE,
ALASKA
99501-3397
TELEPHONE:
(907) 276-1592

Opposition to Motion for Partial Summary Judgment
and Cross-Motion for Remand to State Court
*Coyle v. Colaska, Inc., Alaska Railroad Corporation,* Case No. A05-0221 CV (TMB)   Page 8 of 17

said to have engaged in "artful pleading" in particular "when he pleads: (1) a state cause of action that has been <u>completely</u> preempted by a federal claim...or a (3) state cause of action the merits of which turn on an important federal question."

<u>Id</u>. at 332-333 (emphasis added).

As to the third numbered subsection referenced above, the federal question cannot appear for the first time in defendant's answer or by way of an affirmative defense. <u>Id</u>. at §3722 at pp 405-407. However, removal jurisdiction may still be based on the first numbered subsection, which is the one exception to the prohibition against raising removal jurisdiction in an answer or affirmative defense: specifically, where there exists "complete" preemption of all claims brought under local or state law. <u>Id</u>. at 414-415.

The determination of whether ICCTA completely preempts state law is based on whether the state law governing the Coyles' nuisance, noise and trespass claims interferes with Congress' intent to occupy the field of regulation of railroads as more fully discussed in the next sections below. As the discussion will show, Colaska's private ownership and operation of its gravel loading tipple is not a railroad "facility" or a "transportation" function, nor is Colaska a "rail carrier" entitled to the protections of the ICCTA. Therefore, there is no "complete" preemption, and the Court lacks subject matter jurisdiction.

Moreover, even if there is partial preemption somehow protecting ARRC from the gravel loading operations of the private company, Colaska, because subject matter jurisdiction was not raised except in Colaska's affirmative defense, removal was

HARTIG RHODES
HOGE & LEKISCH
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE,
ALASKA
99501-3397
TELEPHONE:
(907) 276-1592

Opposition to Motion for Partial Summary Judgment
and Cross-Motion for Remand to State Court
<u>Coyle v. Colaska, Inc., Alaska Railroad Corporation</u>,  Case No. A05-0221 CV (TMB)        Page 9 of 17

therefore improper, and the case should be remanded to state court.

### B. Operation of Colaska's tipple is not governed by the ICCTA.

The determination of whether the ICCTA preempts state and local law depends on: (1) whether the state or local law attempts to regulate the operation of tracks or facilities and (2) whether the state or local law attempts to regulate transportation by rail carriers. 49 USC § 10501(b)(1) and (2).

ARRC contends that the Surface Transportation Board ("STB") has exclusive jurisdiction over this case. In fact, however, according to the STB's own decisions, Colaska's gravel-loading tipple does not constitute operation of tracks or facilities or transportation by a rail carrier, which might otherwise fall within STB's exclusive jurisdiction.

Indeed, the STB has expressly refused jurisdiction, and has found the absence of complete preemption, in a case with virtually identical facts, namely, the STB decision in Town of Milford, MA – Petition for Declaratory Order., STB Finance Docket no. 34440 (August 11, 2004).

In Milford, two rail carriers entered into an agreement with "BRT", a private company (not a rail carrier), whereby BRT, the private company, would build and operate a transloading and steel fabrication facility on the railroad's property. Just as ARRC approved Colaska erecting its tipple on or near ARRC property in anticipation of ARRC transporting Colaska's aggregate from its gravel pit, the two rail carriers in Milford, in anticipation of their agreement with the private company for transporting BRT's steel from its fabrication facility, had reinstalled switches on their rail lines at the

HARTIG RHODES
HOGE & LEKISCH
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE,
ALASKA
99501-3397
TELEPHONE:
(907) 276-1592

Opposition to Motion for Partial Summary Judgment
and Cross-Motion for Remand to State Court
*Coyle v. Colaska, Inc., Alaska Railroad Corporation,*  Case No. A05-0221 CV (TMB)      Page 10 of 17

point of interchange between the two rail lines.  Id.

It is interesting that the dispute in Milford arose, not with the non-rail company, but between the two rail carriers, because they actually disagreed whether the proposed arrangement was governed by local zoning and other local laws, with one of the two railroads asserting that the ICCTA shielded both its operations and those of the private company, BRT. Id.

Although the federal district court had granted an injunction enjoining the one carrier from enforcing local laws against the other carrier, the court in Milford stayed its order to permit the STB to consider the matter in full.  Id.

Noting that its jurisdiction and federal preemption under the ICCTA must involve activity that is both "transportation" and "by rail carrier", the STB determined that the private company was not entitled to the protections of the ICCTA, even though the planned activities would be located on property leased from the railroad.  The STB therefore refused jurisdiction, and denied the request for a declaratory order. Id.  The STB's decision was affirmed by the district court, in Grafton and Upton Railroad Company v. Town of Milford, ___ F.Supp.2d ___, 2006 WL 488579 (D.Mass. - February 14, 2006).

Similarly, in the Surface Transportation Board decision in Hi Tech Trans, LLC – Petition for Declaratory Order., STB Finance Docket no. 34192, 2003 WL 21952136 (S.T.B. - August 14, 2003), the STB again refused jurisdiction in a case with similar facts, where Hi Tech (a non-rail carrier) operated a truck-to-rail transloading facility, again on railroad property, and sought to preclude local environmental regulation.

HARTIG RHODES
HOGE & LEKISCH
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE,
ALASKA
99501-3397
TELEPHONE:
(907) 276-1592

Opposition to Motion for Partial Summary Judgment
and Cross-Motion for Remand to State Court
Coyle v. Colaska, Inc., Alaska Railroad Corporation,  Case No. A05-0221 CV (TMB)     Page 11 of 17

Specifically, the STB rejected Hi Tech's contention that its operation of the transloading facility constitutes transportation by rail carrier. Id. at 2. Instead, the STB found that Hi Tech's relationship with the railroad was nothing more than that of a shipper with a common carrier. Id. at 4.

Likewise, Colaska's tipple operations constitute transloading of gravel by a shipper, Colaska, with a rail carrier, ARRC.  Colaska, therefore, just like BRT and Hi Tech, is not some branch of the railroad entitled to the protections of the ICCTA.  Since the claims against Colaska are not preempted, there is not "complete preemption" of all claims, even assuming arguendo that ARRC is somehow entitled to partial preemption, and the Court lacks subject matter jurisdiction and the case should be remanded.

### C. **Ninth Circuit, other federal law, and Alaska law do not support complete, or even partial, preemption in this case.**

ARRC relies heavily on the 9th Circuit case of City of Auburn v. United States, 154 F.3d 1025 (9th Cir.1998), for the proposition that ICCTA preemption is broad, and should be found in this case. The 9th Circuit did indeed affirm the STB's finding that ICCTA preempted state environmental permitting regulations on the facts of that case.

However, unlike this case, where a private company is seeking to cloak itself with the protections of the ICCTA, the prohibited local regulation in Auburn, was by the City of Auburn seeking to impose environmental restrictions on the railroad itself, not on some private customer doing business with the railroad. Moreover, the activities which the City sought to regulate included integral rail activities, such as replacement of sidings and snow sheds, tunnel improvements, and communications towers, and not the loading activities of one of the railroad's customers.  Id.  at 1028.

HARTIG RHODES
HOGE & LEKISCH
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE,
ALASKA
99501-3397
TELEPHONE:
(907) 276-1592

Opposition to Motion for Partial Summary Judgment
and Cross-Motion for Remand to State Court
Coyle v. Colaska, Inc., Alaska Railroad Corporation,  Case No. A05-0221 CV (TMB)       Page 12 of 17

Here, the Coyles' nuisance and trespass claims relate almost exclusively to the noise, dust and trespass arising from the privately-owned tipple, not from the railroad's integral, daily operations.[3]  The tipple is not integrally related to either the operation of facilities or to transportation by a rail carrier.  Indeed, if the tipple operation is enjoined, this will affect neither the operation nor the transportation of Colaska's gravel, as the gravel may be loaded in rail cars across town.  In short, ARRC will still get, and transport, Colaska's gravel whether it's loaded at the tipple or at some other location across town.  Colaska, a private shipper, is the only party adversely impacted by a different loading site. There is simply nothing in the record which shows that if the tipple were shut down at this loading site, ARRC would be prevented from transporting Colaska's gravel if it were loaded at some other location, such as the location presumably used by Colaska prior to building its tipple a few years ago.

ARRC complains, however, that it will also be harmed because it will be prevented from using its side tracks.  While it is true that the side tracks are marginally implicated by the facts of this case, this is only because Colaska happens to co-own the side tracks, and uses them in connection with using its tipple.  However, the Coyles have not asserted claims seeking to prevent ARRC from using the side tracks; indeed, as noted above, the Coyles view the side tracks as adding value to their quasi-commercial property.   The Coyles' complaint, rather, is only about the tipple and gravel pit, owned and operated exclusively by Colaska.

---

[3] The Coyles' claims against Colaska, however, are not limited to tipple operations.  The Coyles' claims for physical trespass by persons employed by, or doing business with, Colaska, and the Coyles' claims concerning Colaska's recently-increased gravel excavation, have nothing whatsoever to do with the tipple loading operations.

HARTIG RHODES
HOGE & LEKISCH
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE,
ALASKA
99501-3397
TELEPHONE:
(907) 276-1592

Opposition to Motion for Partial Summary Judgment
and Cross-Motion for Remand to State Court
*Coyle v. Colaska, Inc., Alaska Railroad Corporation,*  Case No. A05-0221 CV (TMB)      Page 13 of 17

In addition, and also as noted above, ARRC admits that the side tracks are used, and have value to ARRC, separate and apart from Colaska's tipple use or gravel transportation. Indeed, this is why, according to ARRC's affidavits, the side tracks are used for other exclusively-ARRC purposes, and why, in negotiating the Industry Track Agreement, ARRC insisted on its right to use the side tracks for any purpose it wanted, except to load gravel (at that precise location) obtained from anyone but Colaska.

An opinion more similar to the facts of this case than the City of Auburn, is Florida East Coast Ry. Co. v. City of West Palm Beach, 266 F.3d 1324 (11th Cir.2001). There, the City sought to impose zoning and occupational licensing ordinances against Rinker Corporation, a private company conducted aggregate operations on property owned by the railroad. For years, Rinker had engaged the railroad to transport its aggregate throughout Florida, and eventually leased land from the railroad for its aggregate business. Once the railroad delivered aggregate to Rinker's leased portion of land, the railroad's involvement ended. Rinker then unloaded the aggregate and loaded it into trucks for distribution.

The City issued Rinker and the railroad "Cease and Desist" orders. The railroad sought a declaratory judgment that the City's actions were preempted by ICCTA. The 11th Circuit Court held ICCTA did not preempt local zoning law with respect to a private corporation operating an aggregate distribution business on property leased from the railroad.

The case against Colaska is identical to the West Palm Beach case, except that the gravel is being loaded here, rather than unloaded. This case confirms, again, that

HARTIG RHODES
HOGE & LEKISCH
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE,
ALASKA
99501-3397
TELEPHONE:
(907) 276-1592

Opposition to Motion for Partial Summary Judgment
and Cross-Motion for Remand to State Court
*Coyle v. Colaska, Inc., Alaska Railroad Corporation,*  Case No. A05-0221 CV (TMB)   Page 14 of 17

private companies cannot invoke the protections intended by Congress to protect only the railroads and their integral operations. If Congress intended otherwise, then even the Coyles would be entitled to invoke the ICCTA for regulation of, or lawsuits arising from, their purchase of old railroad ties from ARRC, or even for other products delivered to the Coyles by ARRC. For example, if one of Mr. Coyle's customers was injured while buying one of the old railroad ties, and brought suit against Coyle, it is beyond reason to suggest that he would be litigating that case before the STB. Likewise, if a sawmill customer were injured by a product delivered by rail to the Coyles, this would not be a matter tried to the STB.

Although not controlling precedent over this Court, the Alaska Supreme Court case of <u>Native Village of Eklutna v. Alaska Railroad Corporation</u>, 87 P.3d 41 (Alaska 2004), still provides helpful confirmation that the fact-laden question[4] of federal preemption under the ICCTA, cannot generally be answered in favor of preemption for rail activities having nothing more than an incidental impact on traditional rail functions: "Congress did not intend ICCTA to preempt state or local regulation with only a 'remote or incidental effect on rail transportation'", <u>Id</u>. at 41, <u>citing</u> the 11th Circuit case of <u>West Palm Beach</u>, <u>supra</u>.

In <u>Eklutna</u>, as in this case, the Alaska Railroad sought to invoke the protections of the ICCTA to protect its interests in operating a gravel quarry near Eklutna, <u>which quarry, unlike here, ARRC actually owned</u>. In rejecting preemption, the court was even unpersuaded by ARRC's argument that obtaining ballast for its rail tracks was "integrally

---

[4] Both of the STB decisions in <u>Hi Tech</u> and <u>Milford</u> likewise confirm that the question of preemption under circumstances such as those in this case is generally fact-laden.

Opposition to Motion for Partial Summary Judgment
and Cross-Motion for Remand to State Court
<u>Coyle v. Colaska, Inc., Alaska Railroad Corporation</u>,  Case No. A05-0221 CV (TMB)   Page 15 of 17

HARTIG RHODES
HOGE & LEKISCH
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE,
ALASKA
99501-3397
TELEPHONE:
(907) 276-1592

related" to ARRC operations because, the court ruled, operating a gravel quarry was not an integral railroad function.

In other words, the Eklutna court made a distinction between ARRC needing and buying ballast, on one hand, with ARRC owning and operating a quarry to obtain ballast, on the other hand. The latter was simply not an integral rail function. Indeed, cases which have upheld preemption have always required that the prohibited local regulation squarely impact an "integral" rail function. E.g., Green Mountain Railroad v. Vermont, 404 F.3d 638 (2d. Cir. 2005); Maynard v. CSX Transportation, 360 F.Supp.2d 836 (E.D. Ky. 2004); CFNR Operating Company v. City of American Canyon, 282 F.Supp.2d 1114 (N.D. Calif. 2003); Guckenberg v. Wisconsin Central Ltd., 178 F.Supp.2d 954 (E.D. Wisc. 2001).

Just like in Eklutna, ARRC's interest in Colaska's gravel pit or in Colaska's tipple, whatever interest that might be, and even ARRC's interest in using its own side tracks to transport Colaska's gravel when that gravel can just as easily be picked up by ARRC at another of its loading sites, do not rise to the level of an integral rail function protected by the ICCTA or preempted by federal law. There being no basis for subject matter jurisdiction, the motion should be denied, and the case should be remanded to state court.

## V.  Conclusion

Colaska's privately-owned tipple, its employees' and customers' trespasses, and its own noise and dust and light trespasses, both from loading gravel and from operating and excavating in its gravel pit, are private concerns having nothing to do with

HARTIG RHODES
HOGE & LEKISCH
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE,
ALASKA
99501-3397
TELEPHONE:
(907) 276-1592

Opposition to Motion for Partial Summary Judgment
and Cross-Motion for Remand to State Court
*Coyle v. Colaska, Inc., Alaska Railroad Corporation,*  Case No. A05-0221 CV (TMB)        Page 16 of 17

rail transportation.  Just as the Coyles, on one side of the tracks, cannot invoke the protections of the ICCTA, , even in their role as customers or business partners with the railroad, neither can Colaska, on the other side of the tracks, seek these protections. Because there can be no preemption of the state law claims against Colaska, there is not complete preemption, and therefore, no subject matter jurisdiction.

ARRC's interest in Colaska's tipple, in Colaska's gravel, and in Colaska's quarry are not essential and integral rail functions entitled to protection of the ICCTA.  ARRC's use of its side tracks is not impacted by the Coyles' claims, because the tracks are used for other purposes, and no claim has been asserted seeking to end such uses.  There being no complete or partial preemption, the Court lacks subject matter jurisdiction and the case should be remanded to state court.

DATED at Anchorage, Alaska this 30th day of March, 2006.

By: /s/ Douglas C. Perkins
717 K. Street
Anchorage AK 99501
(907) 276-1592 telephone
(907) 277-4352 facsimile
dp@hartig.com email
Alaska Bar No. 8612155

**CERTIFICATE OF SERVICE**
I hereby certify that a copy of the foregoing
was served on the below-identified counsel
on the 30[h] day of March 2006:

David J. Schmid, Esq.

Brewster H. Jamieson, Esq.

/s/ Deanna DeMaagd
HARTIG RHODES HOGE & LEKISCH, P.C.

HARTIG RHODES
HOGE & LEKISCH
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE,
ALASKA
99501-3397
TELEPHONE:
(907) 276-1592

Opposition to Motion for Partial Summary Judgment
and Cross-Motion for Remand to State Court
*Coyle v. Colaska, Inc., Alaska Railroad Corporation,*  Case No. A05-0221 CV (TMB)     Page 17 of 17