IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT PALMER

| | |
|---|---|
| DeETT A. COYLE, and EDWARD COYLE, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | )<br>) Case No. 3PA-05-1388 CI |
| COLASKA, INC., | )<br>) |
| Defendant. | )<br>) |

## AFFIDAVIT OF JON FUGLESTAD

STATE OF ALASKA           )
                          )ss.
THIRD JUDICIAL DISTRICT   )

JON FUGLESTAD, being first duly sworn upon oath, deposes and states as follows:

1. I am the Vice President of Colaska, Inc. and General Manger of QAP, Inc. in Anchorage, which does business as both QAP and AGGPRO.

2. Colaska is the owner and operator of the Meadow Lakes Gravel Pit which is the subject of the plaintiffs' Complaint in this matter.

3. I make this affidavit based upon personal knowledge of the business operations of Colaska, Inc., and from the documents that this company keeps in the ordinary course of its business.

LAW OFFICES OF
DAVID J. SCHMID
500 "L" Street, Suite 503
Anchorage, Alaska 99501-1295
TELEPHONE (907) 276-4335   FAX (907) 278-1812

Affidavit of Jon Fuglestad
*Coyle v. Colaska, Inc.*; Case No. 3PA-05-1388 CI
Page 1 of 9

4. Colaska is a general contractor that specializes in road construction for public construction projects. It also operates as a supplier of sand and gravel, asphalt, concrete, concrete girders, and related items, for use in both public and private construction projects. It has revenues of over $75 million dollars per year, and employs over 500 employees during the construction season.

5. Colaska is currently serving as the general contractor on over ten (10) public construction projects throughout the state, including several ongoing projects with the Alaska Department of Transportation and Public Facility (ADOT/PF). The aggregate contract values of these public construction projects exceeds $50 million dollars.

6. The Meadow Lakes source provides material for all of the projects in the greater Anchorage area, as well as projects in the Mat-Su Borough.

7. In addition to its public construction contracts, Colaska also manufactures and supplies concrete to various customers and construction projects throughout Anchorage. Among other customers, this material is supplied to Home Depot, Bristol Bay Native Corporation, and the Corps of Engineers, and among other projects, it is supplied for use in the Northern Lights Project, the Ship Creek Bridge Project, and Tudor Road Project, and others. All of the aggregate that is used to manufacture and supply this concrete comes from the Meadow Lakes Gravel Pit, where it is transported by train to Colaska's main yard in Anchorage, where it is manufactured into concrete and sold to these outside customers.

8. The property that comprises the Meadow Lakes gravel pit consists of four separate parcels that were acquired by Quality Asphalt Paving, Inc., its principals and/or Colaska between 1994 and 2005. The current size of the combined properties is approximately 298 acres.

9. The principals of Quality Asphalt Paving, Inc. acquired the first parcel of property that comprises the gravel pit in 1994 (17N025W10A011, 17N02W03D001). This is the parcel of property that immediately adjoins the plaintiffs' property. Quality Asphalt Paving, Inc. first used this parcel as a gravel pit in 1994 to supply gravel to a Quality Asphalt Paving, Inc. state project, the Parks Highway MP 44-52 job. This original parcel has since been used to supply gravel to Quality Aspahlt Paving, Inc's. and Colaska's jobs ever since, except for those periods when Quality Asphalt Paving, Inc. lacked work.

10. In 2002, Colaska began planning for the construction of a railroad siding and tipple to load gravel into rail cars. The main construction took place in 2003, with the first train being loaded in 2004.

11. The railroad siding and tipple loading facility was designed and constructed in agreement with the Alaska Railroad, in order to comply with their requirements. The siding had to be long enough to contain an 80-car train with 2 locomotive engines, without blocking the nearby Pittman Road railroad crossing. The 80-car length reflects the standard rate charged by the Alaska Railroad, which is based on an 80-car train. Any trains having have less than 70 cars will cause the operator to incur a higher rate.

12. The tipple had to be constructed high enough to allow a stockpile to hold at least 8,000 tons of gravel.

Affidavit of Jon Fuglestad
*Coyle v. Colaska, Inc.*; Case No. 3PA-05-1388 CI
Page 3 of 9

13. To date, Colaska has invested over $3.8 million dollars in the Meadow Lakes gravel pit, including the purchase price of the parcels of property that comprise the pit, the costs of planning and constructing the railroad siding and tipple, and the cost of construction upgrades and other infrastructure. These costs are broken down as follows:

<u>Purchase price of the land</u>:

$483,000 (Campbell, 17N02W11A025)
$265,000 (B&S Ventures, 17N02W10A025)
$275,000.00 (AK REC Land, 17N02W10A011 & 17N02W03D001)
$850,000 (UAA property purchased in 2005)

<u>Costs of planning and constructing the railroad siding and tipple</u>:

$1,631,717.39

<u>Cost of construction upgrades incurred thus far in 2005</u>:
$324,636.41.

14. The continued operation of the Meadow Lakes gravel pit is essential to Colaska's business. The gravel pit supplies the aggregate required and used by Colaska in performing its public construction projects. It also supplies the aggregate required and used by Colaska for its outside sales of aggregate to other customers. It also supplies the aggregate required and used by Colaska in manufacturing concrete, which is also used for outside sales to other customers.

15. Colaska has extracted over 1 million tons of gravel from the Meadow Lakes gravel pit for use in its business during each of the last two years.

16. Colaska has no other gravel pits or sources of gravel that can meet its or its customer needs. Colaska owns only one other major gravel source in the Matanuska Valley that

is located on a railroad line. It is located in Palmer and only provides sand as a mineable product. This pit has only produced approximately 100,000 tons of sand in the last two construction seasons.

17. It would be extremely difficult and costly for Colaska to obtain and develop another source of gravel that would be sufficient to meet its needs. The scarcity of available sources of gravel in the greater Anchorage area is due, in part, to the fact that the Municipality of Anchorage has prohibited the operation of any gravel pits within the Municipality, pursuant to AMC 21.55.090.

18. Any alternative sources of gravel needs would have to satisfy several requirements: 1) it would have to have at least 300 acres of contiguous property; 2) it would have to have an available source of commercial power; 3) it would have to be located on the Alaska Railroad system; 4) it would have to be close enough to Anchorage to allow a 12-hour train cycle; and 5) it would have to be available for purchase.

19. The Meadow Lakes gravel pit is especially valuable to Colaska as a gravel source because it satisfies all of these requirements.

20. To date, Colaska has not found another source of gravel that meets the foregoing requirements, or any other source of gravel with sufficient acreage to justify the investment of the millions of dollars necessary to purchase the property and construct the necessary infrastructure to mine and load the gravel for transport by the railroad.

21. The plaintiffs in this action purchased their property in 1997, after Quality Asphalt Paving, Inc. had acquired and mined the parcel of property that adjoins their property.

The fact that Quality Asphalt Paving, Inc. had already mined and used its parcel as a gravel pit should have been plainly visible to the plaintiffs at the time they purchased their property. Attached hereto as Exhibit A is a series of aerial photographs taken of the area between 1989 and 2004, which show the extent of Quality Asphalt Paving, Inc.'s excavation of the property at the time the plaintiffs purchased their property.

22. The area in the immediate vicinity of Colaska's and the plaintiffs' properties is used for industrial and/or commercial purposes. The property located immediately across the Glenn Highway from the plaintiffs' property is used as a gas station, towing yard, and private business. There are no private residences in the area, other than the plaintiffs' residence, which adjoins their sawmill.

23. It would be impracticable and/or impossible for Colaska to relocate its tipple and gravel loading facility another place on its property, as has been requested by the plaintiffs. As stated above, the railroad siding was constructed in accordance with the requirements of the Alaska Railroad, at a cost of over $1.5 million dollars. The tipple and loading facility cannot be moved further north on the railroad siding, because the trains would block the Pittman Road railroad crossing during loading operations. The tipple and loading facility also cannot be moved further south on the railroad siding, because Colaska does not own enough property to the south to allow for the extension of the railroad siding, or enough property on which to relocate the tipple and gravel loading facility.

24. Even if it were possible to relocate the tipple and gravel loading facility to another portion of Colaska's property, it would take a complete construction season for Colaska