to relocate them, and would effectively shut down its operation of the gravel pit during that time. Apart from the additional costs that would be incurred by Colaska in relocating the tipple and gravel loading facility, the new location of the tipple and gravel loading facility would cause Colaska to incur increased operating costs, by increasing the number of conveyors needed to transport the gravel to the tipple, resulting in additional labor and electrical costs.

25. It would be impracticable and/or impossible for Colaska to construct a sound and dust barrier between its gravel loading operations and the plaintiffs' property, as has been requested by the plaintiffs. In order to be effective, the barrier would have to be located between Colaska's tipple and gravel loading facility and the plaintiffs' property. The barrier would thus have to be constructed on the railroad right-of-way. This could not be done without the approval of the Alaska Railroad, and could not be done without interfering with the operation of the railroad and/or Colaska's gravel loading operations. Even if it could be done, the estimated cost of constructing a barrier would be over $50,000, and would be difficult or impossible to construct in view of the proximity of the plaintiffs' residence to the railroad right of way, the Alaska Railroad traffic, and the height and length of fence that would be required in order to effectively shield the plaintiffs' residence from the noise and dust created by the gravel loading operations.

26. It would be impracticable and/or impossible for Colaska to discontinue its operation of the gravel pit and gravel loading operations on nights and Sundays, as has been requested by the plaintiffs, on the ground that such operations are essential to Colaska's contracting and material supply businesses. As detailed in my previously filed Affidavit dated

August 15, 2005, Colaska's immediate needs for gravel in the upcoming days and weeks exceeds the amount of gravel that can be transported by train operating only once per day.

27. As detailed in my previously filed Affidavit dated August 15, 2005, if Colaska were prohibited from operating its gravel pit on nights and Sundays, Colaska would be forced to severely curtail or altogether stop its outside sales of gravel and concrete to its customers, resulting in lost sales of approximately $2 million dollars, and placing Colaska in breach of the contracts it has with some of these customers. Colaska would also be unable to complete several important public projects in accordance with their scheduled completion date, subjecting Colaska to liability for liquidated damages, as well as incidental and collateral damages. Colaska would also be forced to stop its nighttime paving operations on the Parks Highway Project, resulting in increased costs of approximately $60,000 in completing the project.

28. If Colaska were prohibited from operating the Meadow Lakes gravel pit altogether, it would effectively force Colaska out of business in the Municipality of Anchorage and Matanuska Susitna Borough.

29. Colaska has already taken action to minimize the noise and dust caused by its gravel loading operations in the Meadow Lakes gravel pit. Among other things, Colaska located its train siding as far it could from the railroad's main line in order to increase its distance from the plaintiffs' property. Colaska also installed a larger conveyer gravel loading system, in order to increase the volume of gravel that can be loaded, thereby decreasing the amount of time required to load the gravel onto the trains. It takes approximately 2.25 hours to load an 80-car train.

30. Colaska also restricts its nighttime gravel loading operations to only those periods when it is necessary to meet its increased gravel needs. In 2004, Colaska conducted nighttime gravel loading operations from September 9, 2004 to October 21, 2004. Thus far, in 2005, Colaska has conducted nighttime gravel loading operations only on eight nights, on July 29, 2005, and on seven nights during the period from August 5 to August 15, 2005, although additional nighttime operations are expected due to Colaska's increased needs.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

_____
JON FUGLESTAD

SUBSCRIBED AND SWORN TO before me this __22__ day of August, 2005.

_____
Notary Public in and for Alaska
My Commission Expires: __04/18/06__

**Certificate of Service**
This is to certify that a true and correct copy of the foregoing document was served by U.S. Mail on the 22nd day of August, 2005, on the following:

Melinda D. Miles, Esq.
William F. Tull & Associates
634 South Bailey Street #201
Palmer, AK 99645

_____
Keena Lukacinsky, Legal Assistant

Affidavit of Jon Fuglestad
*Coyle v. Colaska, Inc.*; Case No. 3PA-05-1388 CI
Page 9 of 9



EXHIBIT A PAGE 1 OF 10



EXHIBIT A  PAGE 2 OF 10





EXHIBIT A  PAGE 3 OF 10