Brewster H. Jamieson, ASBA No. 8411122
LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone: 907-277-9511
Facsimile: 907-276-2631
Email: jamiesonb@lanepowell.com
Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| DEETT A. COYLE and EDWARD COYLE,<br><br>         Plaintiffs,<br><br>v.<br><br>COLASKA, INC.; and ALASKA RAILROAD CORPORATION,<br><br>         Defendants, | Case No. 3:05-cv-00221-TMB<br><br>**REPLY TO MOTION FOR PARTIAL SUMMARY JUDGMENT RE: FEDERAL PREEMPTION AND EXCLUSIVE JURISDICTION OF THE <u>SURFACE TRANSPORTATION BOARD</u>** |

Defendant Alaska Railroad Corporation ("ARRC"), by and through counsel, hereby replies to plaintiffs' opposition to ARRC's motion for partial summary judgment.

**FACTS**

In reviewing the pleadings in this matter regarding the tipple at the gravel pit, it became apparent that the Court might not have been provided a complete explanation of what the tipple is, where it physically is located in relation to ARRC's railroad tracks and how it operates. Therefore, attached are photographs of the subject tipple, before and during loading. *See* Exhibit A, Second Declaration of William R. Hupprich and Exhibit A-1 thereto. The tipple is located in ARRC's right-of-way. As the Court can see, not only is the tipple located immediately adjacent to ARRC's tracks in the gravel pit, but the main "business end" component of the tipple actually extends over and

around the tracks. During the gravel loading procedure, ARRC locates a train car underneath the tipple's control booth, which extends over the tracks. The gravel is brought up by conveyor belt to a point directly above the center of the tracks, and the gravel then drops directly down into the rail car, as in shown in one of the attached photographs.

As for plaintiffs' statement of facts in the opposition, the majority of those facts are simply not relevant to the issues raised in ARRC's motion or plaintiffs' opposition. The history of plaintiffs' purchase of their property, allegations relating to Colaska clear-cutting trees and trespassing on the plaintiffs' property, and the alleged noise and dust from the operation of the tipple and gravel pit, may be relevant to plaintiffs' nuisance action. However, these facts have nothing to do with the narrow, purely legal issues presented by ARRC's motion: that is, whether the complaints against ARRC and the tipple are (1) preempted by the ICCTA, and (2) within the exclusive jurisdiction of the STB. For this reason, nothing in the Coyle and Fuglestad affidavits submitted by plaintiffs either create a genuine issue of material fact which precludes summary judgment for ARRC, or supports plaintiffs' opposition.

The other new "facts" raised in the opposition will be discussed in the appropriate section below.

## ARGUMENT

**1. ARRC's Motion Should Be Granted Regarding ARRC's Operations; Plaintiffs Ignore The Claims Against ARRC's Operations And Focus On The Tipple.**

As was noted in ARRC's motion, by virtue of the Court's Order of November 21, 2005 (Docket No. 13), paragraphs 10-16 of the Second Amended Complaint are deemed to have been made against ARRC. These paragraphs, and plaintiffs' Prayer for Relief, allege nuisance and

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

trespass claims against ARRC from the alleged noise and dust from the operations at the gravel pit, and seek to permanently enjoin the operations at the gravel pit.

However, notwithstanding that the effect of the Court's November 21, 2005 Order is to make the above claims applicable to ARRC, plaintiffs argue:

> Here, the Coyles' nuisance and trespass claims relate almost exclusively to the noise, dust and trespass arising from the privately-owned tipple, not from the railroad's integral, daily operations.
>
> ...
>
> ARRC complains, however, that it will also be harmed because it will be prevented from using its side tracks. While it is true that the side tracks are marginally implicated by the facts of this case, this is only because Colaska happens to co-own the side tracks, and uses them in connection with using its tipple. However, the Coyles have not asserted claims seeking to prevent ARRC from using the side tracks; indeed, as noted above, the Coyles view the side tracks as adding value to their commercial property. The Coyles' complaint, rather, is only about the tipple and gravel pit, owned and operated exclusively by Colaska.

Opposition, p. 13.[1]

Moreover, throughout their opposition plaintiffs focus on the claims involving the tipple, and ignore ARRC's argument that (1) the Interstate Commerce Commission Termination Act ("ICCTA") preempts the claims against ARRC's operations, and (2) the STB has exclusive jurisdiction over the claims relating to ARRC's operations. For instance, in making their preemption argument, plaintiffs argue that the only claim discussed in the motion which is not "completely preempted" by the ICCTA is their claim involving the tipple. Plaintiffs' write at p. 9 of the opposition that the tipple is not "a railroad 'facility' or a 'transportation' function, nor is Colaska a

---

[1] ARRC disputes the "facts" in this quote; ARRC's tracks would not be "marginally impacted" by the shut down of the tipple, as will be discussed further below.

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511 Facsimile 907.276.2631

**Reply To Motion For Partial Summary Judgment Re: Federal
Preemption And Exclusive Jurisdiction Of The Surface Transportation Board**
*Coyle v. Colaska, Inc., et al.* **(Case No. 3:05-cv-00221-TMB)**                           Page 3 of 13

'rail carrier' entitled to the protections of the ICCTA. Therefore, there is no 'complete' preemption, and the Court lacks subject matter jurisdiction." As discussed above, the motion not only discussed the claims against the tipple, but also the claims made against ARRC's operations at the gravel pit. Therefore, plaintiffs impliedly admit that the ICCTA completely preempts all of the claims against ARRC's operations. Therefore, the portion of ARRC's motion regarding the claims against ARRC's operations not having been opposed in any substantive way by plaintiffs, summary judgment should be granted to ARRC regarding the claims relating to ARRC's operations.

The main issue thus comes down to the question of whether ICCTA preemption and STB exclusive jurisdiction applies to the tipple. For the reasons expressed in ARRC's motion and below, they do.

**2. The Tipple Comes Within The Preemption And Exclusive Jurisdiction Provisions Of The ICCTA.**

**A. The Statutory Language Supports ARRC's Motion.**

The ICCTA applies to "transportation by a rail carrier." 49 U.S.C. § 10501(b)(1). Plaintiffs do not counter ARRC's argument that the tipple comes squarely within the definition of "transportation" in 49 U.S.C. § 10102(9) because it is a "facility" or "equipment" "related to the movement of ... property [i.e., the gravel] by rail" as those words and phrases are used in the statute. Plaintiffs do not dispute that ARRC is a "rail carrier" which uses the tipple. Moreover, plaintiffs ignore ARRC's argument that the fact that the tipple is owned by Colaska is irrelevant, as § 10102(9) applies "regardless of ownership" of the transportation facility or equipment which otherwise comes within the definition of that statute.

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

**Reply To Motion For Partial Summary Judgment Re: Federal
Preemption And Exclusive Jurisdiction Of The Surface Transportation Board**
*Coyle v. Colaska, Inc., et al.* (Case No. 3:05-cv-00221-TMB)                    Page 4 of 13

The preemption provisions of the ICCTA and the exclusive jurisdiction of the STB over the gravel loading operation of the tipple are established by elementary statutory construction and application of the plain statutory language, and plaintiffs provide no showing to the contrary.

### B.     The Case Law Does Not Support Plaintiffs.

For the reasons stated below, the cases cited by plaintiffs are inapposite to this case and do not support plaintiffs' opposition. Instead, the Court should follow the many courts cited by ARRC which have found facilities similar to the tipple to be ancillary facilities subject to the ICCTA.

Plaintiffs argue that *Florida East Coast Railway Corp. v. City of West Palm Beach*, 266 F.3d 1324 (11th Cir. 2001), is identical to this case, but that claim cannot stand scrutiny of the facts of *West Palm Beach*, which are as follows in relevant part:

> FEC owns 24.5 acres of property on 15th Street ("15th Street yard") in West Palm Beach, in an area otherwise zoned by the City as a multi-family high density residential district. Situated on this property are an office building, warehouses, five switching tracks, and two loading/unloading tracks. Although FEC had used the 15th Street yard for various intermodal operations for several years, the company ceased those operations in 1999 because of "diminishing business activity and cost of systems enhancements ... along with marginal revenue per unit."
>
> At the time FEC altered the nature of operations at the 15th Street yard, Rinker was FEC's largest customer. Rinker is in the business of supplying building material including "aggregate," the primary feedstock for cement. ... FEC and Rinker therefore negotiated a lease agreement and a trackage agreement whereby FEC would lease to Rinker twenty-one acres of the 15th Street yard (including the office building) and a side track. Additionally, FEC would no longer transport aggregate for Rinker to Rinker's plants throughout Florida; instead, FEC's rail services for Rinker would be limited to the transportation of the aggregate from the Miami-Dade quarries to the 15th Street yard. Operations under the new agreement commenced in January of 2000.

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511   Facsimile 907.276.2631

> Once the aggregate entered the leased portion of the 15th Street yard, FEC's involvement ended. On the property leased from FEC, Rinker situated its aggregate distribution business, .... Rinker hired a company to undertake the unloading of the aggregate but provided certain necessary equipment for the aggregate distribution, including a $79,300 truck-weighing scale and a $7000 loader bucket scale, or "backhoe." Then, Rinker employees loaded trucks, which were owned or hired by Rinker, and dispatched them to other Rinker plants or to external customers. Rinker employees coordinated the distribution network from the office building leased from FEC, including receiving requests for aggregate from Rinker plants and communicating with the aggregate truck drivers. Finally, Rinker was responsible for payment of its expenses on electricity, water, landscape maintenance, and telephone service.

*Id.* at 1326-27. The court acknowledged that under the definition of "transportation" in 49 U.S.C. § 10102(9), the ownership of a "facility, instrumentality, or equipment of any kind related to the movement of ... property" is ignored. However, there is no such limitation on "services" related to the movement of property. *Id.* at 1332. The court then stated:

> Therefore, to the extent that the language relied upon by FEC prevents us from interpreting the scope of the pre-emption provision based on whether FEC or Rinker controls the property at the 15th Street yard, the statutory definition of "transportation" does not prohibit our relying upon such a distinction when evaluating the "services" performed at the property.

*Id.*

The court found that what was being performed on the property by Rinker were distribution "services:"

> When the aggregate reached the 15th Street yard, it was unloaded, stockpiled on the ground, organized by type and grade, and reloaded onto trucks owned or hired by Rinker. Rinker employees then weighed and dispatched the trucks to various destinations.

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

*Id.* at 1332-33. That the case involved distribution services was again emphasized by the court when it found that the distribution center was not "transportation" as defined by the ICCTA:

> In this case, Rinker's use of the property at the 15th Street yard and the activities there performed by Rinker serve no public function and provide no valuable service to FEC; rather, the arrangement between FEC and Rinker merely facilitates Rinker's operation of a private distribution facility on FEC-owned premises.

*Id.* at 1336. The court then held that the distribution services were not "rail transportation" under subject to the ICCTA. *Id.*

Thus, the court in *West Palm Beach* did not hold that the city could regulate the aggregate <u>loading operations</u>, but only the aggregate <u>distribution services</u>. That is, the court found that the city could regulate the distribution services that the railroad had no part in; as the court noted, the railroad's "involvement ended" when it came to the distribution services. *Id.* at 1327. The facts in *West Palm Beach* are inapposite to the instant case because the tipple cannot be characterized as a distribution service. Unlike the distribution services in *West Palm Beach*, the tipple is an actual, mechanical device which comes squarely within the definition of "facility" or "equipment" under 49 U.S.C § 10102(9). Also unlike the distribution services in *West Palm Beach*, it cannot be said that ARRC's "involvement ended" when it came to the tipple. The tipple is an integral and indispensable part of ARRC's gravel hauling operation because (1) the reason the track was built into the gravel pit was to serve the tipple and gravel operations, (2) the tipple is not only located within ARRC's right-of-way, it physically extends around ARRC's tracks, (3) ARRC actually uses the tipple to load gravel, and (4) if the tipple is shut down, ARRC's operations would also be forced to shut down. Further, unlike the distribution services in *West Palm Beach* which provided "no valuable service" to the rail carrier (*id.* at 1336), the tipple provides great value to ARRC in allowing ARRC to perform

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511   Facsimile 907.276.2631

its gravel hauling operation for which it charges Colaska. Therefore, as the tipple is a "facility" or "equipment," and not a "service," the fact that the tipple is owned by Colaska must be ignored and cannot prevent the tipple from being "transportation" as defined in 49 U.S.C. § 10102(9).

Plaintiffs also rely on two STB decisions: *Town of Milford, MA—Petition for Declaratory Order* (August 11, 2004), 2004 WL 1802301 (S.T.B.), and *Hi Tech Trans, LLC—Petition for Declaratory Order—Newark, NJ* (August 14, 2003), 2003 WL 21952136 (S.T.B.). It first must be noted that, in both decisions, the STB expressly agreed that the transloading facility at issue came within the definition of "transportation" under § 10501(b) of the ICCTA.[2] *Milford* at *2 ("BRT's planned transloading activities would fall within the statutory definition of transportation"); *Hi-Tech* at *4 ("There is no dispute that Hi Tech's transloading activities are within the broad definition of transportation."). However, in both decisions the question of whether the facility satisfied the second part of the statutory equation under § 10501(b)—that is, transportation "by a rail carrier"—turned on the issue of whether the facility was "integrally related" to the rail carrier's service. *Milford* at *3; *Hi Tech* at *4. In both decisions, based on the specific facts in each case the STB found that the facilities at issue were not "integrally related."

This case is thus distinguishable from *Milford* and *Hi Tech* because, as discussed in detail in the motion, the tipple is "integrally related" to ARRC's rail transportation. There is no indication in *Milford* or *Hi Tech* that the rail tracks or other railroad equipment at issue were constructed for the sole purpose of servicing the transloading facility. By contrast, it is undisputed that ARRC's tracks at the gravel pit were constructed for the express purposes of servicing the gravel

---

[2] *Milford* and *Hi Tech* thus differ from *West Palm Beach*, where the distribution services at issue were found not to be "rail transportation" at all.

**Reply To Motion For Partial Summary Judgment Re: Federal
Preemption And Exclusive Jurisdiction Of The Surface Transportation Board**
*Coyle v. Colaska, Inc., et al.* (Case No. 3:05-cv-00221-TMB)                    Page 8 of 13

**LANE POWELL** LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

operations at the pit. There is no indication in *Milford* or *Hi Tech* that shutting down the transloading facilities at issue would have meant completely shutting down the railroad's tracks and operations at those locations, or would have had any other significant economic impact on the railroad. By contrast, it is undisputed that shutting down the tipple will require ARRC to shut down its tracks and operations at the gravel pit. Further, the transloading facilities at issue in *Milford* and *Hi Tech* involved far more than the mere physical loading or unloading of rail cars, thus attenuating the relationship between those facilities and the rail carrier's operations. By contrast, it is important to remember that in its motion ARRC is only seeking to have the tipple be found subject to the ICCTA; ARRC is not seeking this for any other operation by Colaska at the gravel pit. The tipple is the piece of equipment which is used directly to physically load the rail cars; its sole purpose is to load gravel into the rail cars, it extends over and around ARRC's tracks, and, again, without the tipple ARRC will be forced to cease its operations at the gravel pit.

Therefore, for the reasons stated above, this case is much closer to the cases discussed in ARRC's motion where the courts found that the subject transloading facility was an ancillary facility "integrally related" to rail transportation, and thus governed by the preemption/exclusive jurisdiction provisions of the ICCTA.

Finally, plaintiffs' discussion of *Native Village of Eklutna v. Alaska Railroad Corporation*, 87 P.3d 41 (Alaska 2004), does not support the opposition.[3] In that case the Alaska Supreme Court found that ARRC's operation of a quarry was not "integrally related" to ARRC's rail

---

[3] Although not particularly germane to these issues, it must be noted that plaintiffs' description of the quarry in *Eklutna* as a gravel quarry appears to be incorrect. The case itself described the quarry as a "rock" and "granite" quarry. *Eklutna*, 87 P.3d at 43-44, 57.

LANE POWELL LLC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

**Reply To Motion For Partial Summary Judgment Re: Federal
Preemption And Exclusive Jurisdiction Of The Surface Transportation Board**
*Coyle v. Colaska, Inc., et al.* **(Case No. 3:05-cv-00221-TMB)**                           Page 9 of 13

operations, but the facts in that case are easily distinguishable from the instant case. First, there was no indication in *Eklutna* that the quarry in that case was served by a rail line. In the instant case, by contrast, the gravel pit is served by a rail line which was specifically constructed to serve the gravel pit operations. For the reasons discussed above and in ARRC's motion, the operation of the tipple is integrally related to the operation of ARRC's rail lines at the gravel pit. Second, the Alaska Supreme Court's holding in *Eklutna* was based on its finding that there would be little economic impact on ARRC if it could not use the quarry. The Court found that ARRC did not establish "that the economic impact of obtaining ballast from other sources would be so significant that it would necessarily interfere with rail operations." *Id.* at 57. While recognizing that a certain level of "economic impact" on rail operations would trigger preemption, the Court found that any economic impact in that case was not sufficient enough. *Id.* Instead, the Court held that ARRC did not show that the application of the Municipality's zoning ordinance in that case "will have a more than incidental impact on its operations." *Id.* Thus, in *Eklutna* there was no evidence that stopping operations at the quarry would shut down any rail operations. In the instant case, by contrast, the fact is undisputed that shutting down the tipple would have the effect of shutting down ARRC's rail operations at the gravel pit. It is also undisputed, as shown by Mr. Hupprich's declaration referenced in the motion, that shutting down the tipple would have a "significant" economic impact on ARRC, not the mere "incidental impact" involved in *Eklutna*. Therefore, even under the standards discussed in *Eklutna*, the tipple is "integrally related" to ARRC's rail operations.

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

### C. Plaintiffs' Other Arguments Do Not Support The Opposition.

At pp. 6 and 13-14 of the opposition, plaintiffs put forward four arguments in support of their claim that the tipple is not "integrally related" to ARRC's operations. However, plaintiffs' reliance on these arguments is misplaced. First, plaintiffs state:

> However, there is nothing in the record which shows that if the tipple were shut down at this loading site, Colaska would be prevented from transporting its gravel to some other rail loading location, such as that presumably used by Colaska prior to building its tipple a few years ago.

Opposition, p. 6; *and see id.*, p. 13.

Beyond the fact that this is mere speculation, it misses the point of the motion. The potential availability of an alternative gravel loading facility outside of the gravel pit has no bearing on the subject of the motion, which addresses the legal questions of whether <u>this</u> particular tipple is an ancillary facility, integrally related to rail transportation, and so subject to the preemption/exclusive jurisdiction provisions of the ICCTA. Moreover, the very questions of whether there is an alternative gravel loading facility which could be used, and whether this means that Colaska should be made to shut down the tipple, must be presented to and resolved by the STB under the exclusive jurisdiction granted by the ICCTA. For the reasons stated in ARRC's motion, Colaska's use of the tipple can only be resolved by the STB.

Second, plaintiffs claim that "there is nothing in the record which suggests that [ARRC] will be prevented from transporting all of Colaska's product if it is delivered to another of ARRC's loading facilities." *Id.*, p. 6. Plaintiffs' add at p. 13 of the opposition: "In short, ARRC will still get, and transport, Colaska's gravel whether it's loaded at the tipple or at some other location across town." Again, this is irrelevant because whether the use of this particular tipple and ARRC's

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511 Facsimile 907.276.2631

particular tracks at the gravel pit are subject to the preemption/exclusive jurisdiction of the ICCTA is what at issue in the motion, not the speculative use of other speculative facilities. Also, again, it is up to the STB to decide, under the exclusive jurisdiction granted to it by the ICCTA, whether ARRC can and should use another facility to load Colaska's gravel.

> Third, plaintiffs argue:
>
> [w]hile it is true that the side tracks are *marginally* implicated by the facts of this case, this is only because Colaska happens to co-own the side tracks, and uses them in connection with its tipple. However, the Coyles have not asserted claims seeking to prevent ARRC from using the side tracks ....

*Id.*, p. 13 (emphasis added). There is no evidence at all that the effect of plaintiffs' claims, if granted the remedy they seek, would have only a "marginal" effect on ARRC's tracks and operations at the gravel pit. In fact, the undisputed evidence is to the contrary. If the plaintiffs are granted the permanent injunction they pray for, the effect on ARRC's tracks will not only be substantial, it will be total. As noted in Mr. Hupprich's declaration referenced in ARRC's motion (and which is uncontested by plaintiffs), permanently enjoining the use of the tipple would result in ARRC's shutting down its operations at the gravel pit. Whether or not plaintiffs intended to prevent ARRC's use of its tracks (and the issue of intent is irrelevant) it is undisputed that the actual effect of the plaintiffs' claims would be to prevent ARRC from using its tracks and equipments at the gravel pit. It is for that reason that the ICCTA applies to the tipple and subjects the tipple to the preemption/exclusive jurisdiction provisions of that statutory scheme.

Finally, plaintiffs write that ARRC uses the side tracks at the gravel pit for other purposes. *Id.*, p. 6 and 14. However, the ICCTA applies to all attempts to regulate railroad transportation and facilities which fall within the scope of that statute. Nothing under the law holds

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

**Reply To Motion For Partial Summary Judgment Re: Federal
Preemption And Exclusive Jurisdiction Of The Surface Transportation Board**
*Coyle v. Colaska, Inc., et al.* (Case No. 3:05-cv-00221-TMB)                                                                 Page 12 of 13

that the tipple cannot be an "integral facility" unless the sole and exclusive use of ARRC's tracks at the gravel pit was to serve the tipple. If the tipple is an "integral facility" otherwise subject to the ICCTA, it does not fall out of that statute merely because ARRC sometimes parks trains on the side track. Because plaintiffs' complaint seeks to affect ARRC's rail operations through enjoining ARRC's operations at the gravel pit, as well as enjoining the tipple, the ICCTA applies. Moreover, and importantly, if the plaintiffs are granted the permanent injunction they seek, it is undisputed that the effect would be to shut down ARRC's rail operations at the gravel pit.

## **CONCLUSION**

For the reasons stated above and in the motion, the court is respectfully requested to grant ARRC's motion for partial summary judgment in its entirety and dismiss with prejudice the claims alleged by plaintiffs against ARRC, and the claims relating to the operation of the tipple.

DATED this 26th day of April, 2006.

                              LANE POWELL LLC
                              Attorneys for Alaska Railroad Corporation


                              By  s/ Brewster H. Jamieson
                                 Brewster H. Jamieson
                                 301 West Northern Lights Boulevard, Suite 301
                                 Anchorage, Alaska  99503-2648
                                 Tel: 907-277-9511
                                 Fax: 907-276-2631
                                 Email:  jamiesonb@lanepowell.com
                                 ASBA No. 8411122

I certify that on April 26, 2006, a copy of
the foregoing was served by ECF on:

Douglas C. Perkins, Esq.  dp@hartig.com
David J. Schmid, Esq.  schmid-law@gci.net

  s/ Brewster H. Jamieson
113951.0010/154594.1

**LANE POWELL LLC**
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

**Reply To Motion For Partial Summary Judgment Re: Federal
Preemption And Exclusive Jurisdiction Of The Surface Transportation Board**
*Coyle v. Colaska, Inc., et al.* (Case No. 3:05-cv-00221-TMB)                    **Page 13 of 13**