Douglas C. Perkins, ASBA No. 8612155
HARTIG RHODES HOGE & LEKISCH P.C.
717 K. Street
Anchorage, Alaska 99501
Telephone: 907-276-1592
Facsimile: 907-277-4352
Email: dp@hartig.com
Attorneys for DeEtt A. Coyle and Edward Coyle

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| DEETT A. COYLE and EDWARD COYLE,<br><br>　　　　Plaintiffs,<br><br>　vs.<br><br>COLASKA, INC.; and ALASKA RAILROAD CORPORATION,<br><br>　　　　Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) **Case No. A05-0221 CV (TMB)**<br>) |

## REPLY TO CROSS-MOTION FOR REMAND TO STATE COURT

Plaintiffs Edward Coyle and DeEtt A. Coyle ("Mr. and Mrs. Coyle") hereby respond in reply to the opposition, filed by Defendant Alaska Railroad Corporation ("ARRC"), to the Coyles' cross-motion for remand to state court. As discussed below, and in the Coyles' opening memorandum, the facts and claims at issue do not invoke the jurisdiction of the Surface Transportation Board, the Court is without subject matter jurisdiction over this case, and therefore, an order should be entered remanding the case to Alaska state court.

HARTIG RHODES
HOGE & LEKISCH
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE,
ALASKA
99501-3397
TELEPHONE:
(907) 276-1592

### A. The Coyles' claims against Colaska involve not only the tipple, but also Colaska's operation and expansion of the entire gravel pit.

ARRC complains that, in the Coyles' cross-motion, they "ignore the claims against ARRC's operations and focus [instead] on the tipple." This is absolutely correct. The Coyles have no complaint whatsoever about ARRC's operations, and the Coyles' focus is, indeed, on Colaska's tipple. This is exactly why the Coyles have not asserted claims against ARRC. This case has nothing to do with a rail carrier's integral (or even its non-integral) operations; it is ALL about the trespasses and nuisances associated with Colaska's operation of its gravel pit, including its privately-owned and privately-operated tipple. This is precisely why in this case, just as in Grafton and Upton Railroad Company v. Town of Milford, ___ F.Supp.2d ___, 2006 WL 488579 (D.Mass. - February 14, 2006) and Hi Tech Trans, LLC – Petition for Declaratory Order., STB Finance Docket no. 34192, 2003 WL 21952136 (S.T.B. - August 14, 2003), the Surface Transportation Board has no jurisdiction over the facts and claims which the Coyles have brought against the non-rail carrier, Colaska.

It cannot be emphasized enough, however, that the Coyles' claims against Colaska are <u>not limited to</u> tipple operation. Instead, this litigation is also based upon Colaska's overall gravel pit operations, and especially, its significant expansion of the gravel pit far beyond the scope of the pit as it was used at the time the Coyles purchased their property in 1997. The Coyles truly did not "come to the nuisance"; it "came to them". The pit operations and expansion have nothing to do with rail transportation.

ARRC objects to the Coyles' factual presentation as to how Colaska's use of the

HARTIG RHODES
HOGE & LEKISCH
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE,
ALASKA
99501-3397
TELEPHONE:
(907) 276-1592

pit has dramatically changed during the last few years, contending that these facts have nothing to do with the "narrow legal issues" underlying the cross-motion to remand.  At the same time, however, ARRC concedes (in its Reply at 2, ¶2) that these facts "may be relevant to plaintiffs' nuisance action."   It cannot seriously be disputed that these facts are essential to the Coyles' claims against Colaska, and given this, there cannot be complete preemption because the law governing adjudication of these facts is purely state law, not federal law.    While ARRC is correct that these facts do not apply to ARRC (or to rail transportation), they do apply to the claims against Colaska which ARRC is endeavoring to broadly sweep under the protections of ICCTA.

> **B.** **The Coyles have not asserted claims against ARRC, nor is there protected "transportation" by a "rail carrier".**

Apparently trying to create a federal question and subject matter jurisdiction where neither exists, ARRC repeatedly contends that the Coyles' claims against Colaska for operation of its tipple are "deemed" to be asserted against ARRC (similarly, ARRC would presumably have the Court accept that the claims concerning Colaska's operation and expansion of its gravel pit are likewise asserted against ARRC).

The only possible basis for this argument is that ARRC has elected to intervene in this lawsuit, presumably meaning that this somehow creates causes of action against ARRC based upon non-existent facts or reasons.   However, in the absence of facts and claims, ARRC's intervention alone cannot create jurisdiction nor can its intervention create a federal question.    The Coyles have consciously chosen not to sue ARRC because they have no complaint against ARRC, and instead, the Coyles complaint lies

HARTIG RHODES
HOGE & LEKISCH
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE,
ALASKA
99501-3397
TELEPHONE:
(907) 276-1592

Reply to Cross-Motion for Remand to State Court
*Coyle v. Colaska, Inc., Alaska Railroad Corporation,*  Case No. A05-0221 CV (TMB)        Page 3 of 11

solely with the private operation of Colaska's gravel pit and its privately-owned tipple.

If, however, the Court is inclined to "deem" the claims as also being asserted against ARRC, then the Coyles hereby dismiss any such claims against ARRC. If the Court does not order this dismissal, then the Court is, of course, free to transfer the "claims" against ARRC for further proceedings before the Surface Transportation Board. However, the Coyles would have no intention of pursuing any such "claims", and this would still leave open the question of whether the claims against Colaska, not only for the tipple but for its gravel pit operations, should be remanded to Alaska state court.

The reality is that there is no basis for the claims against Colaska to be litigated by the STB. Indeed, as noted by the STB itself, in the cases of Grafton and Hi Tech Trans, it is simply not enough that the challenged activity have some tangential relationship with rail operations. Rather, *it must be: (a) transportation activity, which is (b) conducted by a rail carrier.* Simply put, Colaska's private operation of its tipple, and most certainly its pit operations, are not "transportation" and Colaska is not a "rail carrier". Therefore, its operation of its pit and the tipple can never be entitled to the protections of the ICCTA.

Any other conclusion was never intended by Congress, as this would broadly sweep within the ICCTA virtually all of the activities of a particular railroad's customers. For example, if the physical loading of product such as steel (or gravel) aboard rail cars were protected under the ICCTA, then wouldn't the delivery of the product to the point of physical loading also be protected? How about the processing (or screening) of the steel (or gravel) prior to delivery to the loading point? Or, prior to that, the manufacture

HARTIG RHODES
HOGE & LEKISCH
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE,
ALASKA
99501-3397
TELEPHONE:
(907) 276-1592

(or excavation) of the product?  And, just as with the supply (loading) chain of activity, wouldn't the distribution (unloading) chain of activity likewise fall within the ICCTA? And if so, how far along the chain would the protection extend?

Indeed, wouldn't the Coyles' own sawmill operations, in their role as occasional customers of the railroad, *at this very site,* likewise fall under the protections of the ICCTA?  Congress never intended this result which, if it had ever been sustained by the courts, would literally inundate the federal courts with undeserving cases removed to federal court under the ICCTA, by non-rail carriers.

The further problem with ARRC's interpretation of the ICCTA is that it provides the Court with no useful guidance on where to draw the line.  How far up the chain of distribution (or supply) does ICCTA extend?  This dilemma is why the STB has articulated the bright line test, as explained in Grafton and Hi Tech Trans on facts identical to those at issue here:  The challenged activity must involve BOTH "transportation" AND by a "rail carrier".   Here, the challenged operation of the tipple is neither transportation nor by a rail carrier.  As to the gravel pit operations themselves, the parties seem to concede that these are certainly not protected "transportation", and yet ARRC's has argued complete preemption and has asked that even these non-transportation claims be adjudicated by the STB.

ARRC appears to argue that the case of Florida East Coast Ry. Co. v. City of West Palm Beach, 266 F.3d 1324 (11th Cir.2001) actually supports ARRC's position in this case.  In particular, ARRC contends that the West Palm Beach case protects "loading" operations, but does not apply here because Colaska's tipple activities are not

HARTIG RHODES
HOGE & LEKISCH
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE,
ALASKA
99501-3397
TELEPHONE:
(907) 276-1592

"distribution" activities. Again, however, this argument provides no useful guidance to the Court, which is undoubtedly again left wondering where the distribution (or supply) of gravel begins and where it ends.

Moreover, the distinction which ARRC advances, between "loading" and "distribution", is not helpful because these two activities are simply different sides of the same functional coin. The West Palm Beach case does not, in fact, hinge upon the fact that the product was traveling in one direction (distribution), rather than in the other direction (supply). Rather, according to the language quoted by ARRC:

> [the] use of the property at the 15th Street yard and the activities there performed by Rinker serve no public function and provide no valuable service to [the railroad]; rather the arrangement between [the railroad] and Rinker merely facilitates Rinker's operation of a private distribution facility on [railroad]-owned premises.

Id. at 1336 (emphasis supplied). Thus, this 11th Circuit case would apply with equal force to Rinker's activities, whether they were distribution (unloading) or supply (loading).

With all due respect, ARRC appears to take liberties with the facts giving rise to this litigation, by next arguing that "the tipple is an integral and indispensable part of ARRC's gravel hauling operation. . .", and claiming that "it charges Colaska" for "its [ARRC's] gravel hauling operation". [ARRC's Reply brief, incorporated by reference into its Opposition, at 7-8, emphasis supplied]. The Court should be aware, however, that there are no facts showing that ARRC hauls any gravel which is then loaded into the tipple, much less that Colaska pays ARRC to haul and load Colaska's own gravel.

If ARRC is instead referring to its rail cars "hauling" Colaska's gravel down the

HARTIG RHODES
HOGE & LEKISCH
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE,
ALASKA
99501-3397
TELEPHONE:
(907) 276-1592

Reply to Cross-Motion for Remand to State Court
*Coyle v. Colaska, Inc., Alaska Railroad Corporation,*  Case No. A05-0221 CV (TMB)        Page 6 of 11

railroad tracks, then this misses the point that the Coyles' lawsuit is for activities which <u>conclude</u> at the point at which the privately-owned tipple supplies (loads) gravel onto the <u>non-moving</u> rail cars. At no time have the Coyles complained about ARRC's physically moving the loaded rail cars down the tracks, as this would clearly constitute protected "transportation". Although it seems abundantly clear that the manner in which the gravel is loaded onto the rail cars, whether by tipple, by front end loader, or by hand, has nothing whatsoever to do with ARRC's subsequently "hauling" its many customers' product down the rail lines, the Coyles want to be clear that they complain only about Colaska's operations <u>before</u> the gravel is "hauled" down the rail tracks.

ARRC next argues that, if the tipple is shut down, ARRC's operations would also be forced to shut down." This argument, however, simply begs the question as to whose operations are challenged. The reality is that ARRC's operations are limited to its rail cars being the passive vessels into which Colaska's aggregate is loaded by Colaska's tipple. The act of loading is where Colaska's challenged operations end, and where ARRC's unchallenged operations begin. The Coyles have no objection or complaint about the ARRC's "hauling" operations; they object, however, to all of Colaska's operations occurring prior to, and up to the point at which, the rail cars are fully loaded and enroute.

### C. There is no subject matter jurisdiction.

ARRC apparently concedes that its intervention alone does not confer subject matter jurisdiction (i.e., that the Coyles' complaint does not itself allege claims subject to preemption), because ARRC next argues that this case falls under the <u>exception</u> to the

HARTIG RHODES
HOGE & LEKISCH
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE,
ALASKA
99501-3397
TELEPHONE:
(907) 276-1592

"well-pleaded complaint rule", claiming that there is complete preemption, i.e. "the state law claims alleged in the complaint are completely preempted by federal law". This argument, however, ignores the fact that the Coyles have not asserted any claims at all against ARRC, and for the reasons articulated above, any "deemed" claims should either be dismissed, or if not, they should be separately transferred for "litigation" before the STB.

In addition, this argument essentially assumes that ARRC is itself operating the tipple. However, the facts elucidated in this and the opening memorandum (and exhibits) amply demonstrate that ARRC is nothing more than the shipper, and that, Colaska is the sole owner and operator of the offending tipple.

This argument further ignores that there can never be "complete preemption" because a significant portion of the Coyles' claims pertains to Colaska's operation and expansion of the gravel pit, which have no relation to protected rail transportation.

Absent complete preemption, there cannot be subject matter jurisdiction according to the "well-pleaded complaint rule". But, taking advantage of this rule is not the reason that the Coyles did not sue ARRC. The true reason is that Colaska, not ARRC, is the owner, operator, excavator, and expander of the gravel pit, and as well, is the owner and sole operator of the offending tipple. The Coyles simply have no "beef" with ARRC.

Attempting nonetheless to create the impression that it has a stake in this case, ARRC contends that, if the tipple is shutdown, then ARRC will also be shut down. However, just because the Coyles' claims, if successful, might have an incidental

HARTIG RHODES
HOGE & LEKISCH
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE,
ALASKA
99501-3397
TELEPHONE:
(907) 276-1592

Reply to Cross-Motion for Remand to State Court
*Coyle v. Colaska, Inc., Alaska Railroad Corporation,*  Case No. A05-0221 CV (TMB)     Page 8 of 11

impact on ARRC's revenues or finances, even including a partial or total decrease in ARRC's use of the side rails, does not create STB jurisdiction over a non-rail carrier such as Colaska.  To illustrate this point, if the Matanuska-Susitna Borough, together with the City of Wasilla, were to ban altogether the excavation of gravel because of the air and noise pollution which accompanies such operations, this would certainly have an incidental impact on ARRC's revenues, and would likely cause the partial or total decrease in use of the side rails located next to Colaska's gravel pit.  Moreover, this might even force Colaska out of the gravel business altogether in Wasilla.   However, it seems abundantly clear that neither ARRC nor Colaska would be entitled to litigate this matter before the STB.   The reason would be that excavation of gravel has nothing whatsoever to do with ARRC's transportation functions (and for Colaska, the reason would be that it is not a "rail carrier").   Any impact of this hypothetical local regulation upon rail transportation, though significant, would be incidental and not integral to rail functions.   Likewise, the Coyles' nuisance and trespass action against the private party, Colaska, might impact ARRC, but for reasons incidental and not integral to rail transportation.

### D. There is no federal question.

ARRC's next argument is that the facts underlying the Coyles' complaint and claims raise a "substantial federal question", i.e. that there are "subsumed" within the Coyles' complaint, claims which are "necessarily federal in character" or where "relief depends on the resolution of a substantial, disputed federal question".

Again, Colaska's private operation of the private tipple is not ARRC's operations.

HARTIG RHODES
HOGE & LEKISCH
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE,
ALASKA
99501-3397
TELEPHONE:
(907) 276-1592

Reply to Cross-Motion for Remand to State Court
*Coyle v. Colaska, Inc., Alaska Railroad Corporation,*  Case No. A05-0221 CV (TMB)        Page 9 of 11

Likewise, Colaska's operation and expansion of the gravel pit are not ARRC's operations. Claims relating to these operations are governed by state law, and therefore, should be remanded to state court.

### E. There is no supplemental jurisdiction.

ARRC next contends that the Court has supplemental jurisdiction, i.e. "over all <u>other</u> claims that are so related to claims in the action. . .that they form part of the same case or controversy. . ."

This argument goes back to the same questions: Who owns and operates the tipple, who owns and operates the gravel pit, and who expanded the gravel pit in the direction of the Coyles' property? The answer to these questions is Colaska, but this does not give rise to supplemental jurisdiction for two reasons: (1) ARRC was merely the shipper, not the owner or operator or actor involved in any of these activities, and (2) no claims have been asserted against ARRC. Unless claims are asserted against ARRC in the first place, there can be no federal claims on which Colaska can "piggyback" its purely state court claims, so as to create supplemental jurisdiction.

### V. Conclusion

Colaska's privately-owned tipple, its employees' and customers' trespasses, and its own noise and dust and light trespasses, both from loading gravel using its tipple, and from operating, excavating and expanding its gravel pit, are private concerns having nothing to do with rail transportation. Because there can be no preemption of the state law claims against Colaska, there is not complete preemption, and therefore, no subject matter jurisdiction. Because there are no federal (or other) claims asserted

HARTIG RHODES
HOGE & LEKISCH
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE,
ALASKA
99501-3397
TELEPHONE:
(907) 276-1592

Reply to Cross-Motion for Remand to State Court
*Coyle v. Colaska, Inc., Alaska Railroad Corporation,*  Case No. A05-0221 CV (TMB)         Page 10 of 11

against ARRC, there cannot be supplemental jurisdiction.

ARRC's financial interest in Colaska's tipple, in Colaska's gravel, and in Colaska's quarry are not essential and integral rail functions entitled to protection of the ICCTA. Instead, ARRC's interests are merely derivative of its customer's interests. ARRC's use of its side tracks is not impacted by the Coyles' claims, because the tracks are <u>admittedly</u> used for other purposes, and no claim has been asserted seeking to end such uses. There being no complete or partial preemption, the Court lacks jurisdiction and the case should be remanded to state court.

DATED at Anchorage, Alaska this 3rd day of May, 2006.

By: /s/ Douglas C. Perkins
717 K. Street
Anchorage AK 99501
(907) 276-1592 telephone
(907) 277-4352 facsimile
dp@hartig.com email
Alaska Bar No. 8612155

**CERTIFICATE OF SERVICE**
I hereby certify that a copy of the foregoing
was served on the below-identified counsel
on the 3rd day of May 2006:

David J. Schmid, Esq.

Brewster H. Jamieson, Esq.

/s/ Deanna DeMaagd
HARTIG RHODES HOGE & LEKISCH, P.C.

HARTIG RHODES
HOGE & LEKISCH
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE,
ALASKA
99501-3397
TELEPHONE:
(907) 276-1592